WOMAN'S CHRISTIAN NATIONAL LIBRARY ASSOCIATION v.

FORDYCE.

Opinion delivered December 10, 1905.

EJECTMENT—SUFFICIENCY OF COMPLAINT.—A complaint in ejectment which alleges that plaintiff is the owner and entitled to possession, and that defendant is in possession wrongfully, states a good cause of action.

Appeal from Garland Circuit Court; *Alexander M. Duffie, Judge;* reversed.

The plaintiff, the Woman's Christian National Library Association, a corporation, brought this action against S. W. Fordyce and Charles H. McKee.

The complaint charges in effect that Mrs. E. B. Hotchkiss and a number of other ladies, being desirous of founding a free public library in the city of Hot Springs, and of making donations of funds as a matter of purely public charity, for the purpose of securing, providing and obtaining a suitable and attractive building, where the literature and books of such a library might be permanently lodged, donated the sum of $100 to be used for the purpose of paying for certain lots in Hot Springs to be used for such purpose only. In order to secure the right to enter the property, which then belonged to the United States Government, they petitioned Congress to permit a corporation which they had organized as charitable trustee to receive title to said property, to enter same for a free public library; setting forth in their petition that they had organized a corporation having for its object the establishment of a free public library and reading room; that its objects were purely public and charitable, and contemplated, for the free use of the thousands of sick who are constantly in attendance at the Springs, commodious rooms, a large library and newspapers, etc. Their petition concluded by asking that an act be passed granting to said association this property "to be held by them while it shall be so used." That Congress, upon receiving their petition, appointed a committee and adopted their report, which is entitled "Lot at Hot Springs, Ark., for use of Woman's Library Association." That the report shows that Congress understood the object was "to erect a building thereon for so laudable a purpose as that of furnishing a free library and reading room to the thousands of sick, rich and poor, constantly in attendance at the Springs from every quarter of the country." The Congressional committee in its report also seemed to understand that these ladies expected to donate these lots, as it says: "Your committee, believing said association to be sincere in its work of charity, has concluded that the Government in its generosity ought to aid it to the extent of donating the

grounds for its building." That the act of Congress authorized the Association to enter "for the uses and purposes of such Association." The complaint then alleges that thereupon the said corporation used the money donated for said charitable purpose expressly to make entry of said land, and received a patent which alludes to said act. The complaint sets forth the articles of incorporation of the Association, which include the petition to the circuit court alleging that the object of the Association was "for the purpose of establishing, providing and keeping, in the City of Hot Springs, Garland County, Ark., a library for the free use of the public generally, and soliciting and receiving donations and aid for said purposes." The articles of the Association provide: "They (the officers) shall not make any contract or bill with any one that shall operate as a lien or mortgage on the building or library of the Association."

Articles ten and eleven of the Association provide as follows:

"10. The object of this association shall be to provide books, newspapers and magazines of such character as will afford instruction and diversion, but such books and papers as are demoralizing in their tendency or subversive of religion shall not be admitted.

"11. The object of this association is to provide a suitable and attractive building where the literature of the association may be permanently lodged, and where suitable lecture rooms on such subjects as are not in field of political or theological controversy, and other entertainments not in conflict with the objects of the Association may be given."

That the corporation is and was a mere trustee of the naked legal title to said property for a public charitable use, and has never had any beneficial interest in the same, or any interest which could be taken, sold or appropriated to satisfy any judgment obtained against said corporation for the torts of its agents. That the defendants have possession of said property without right, claiming to own the same by virtue of a sale under execution for the enforcement of a judgment for damages rendered for an alleged tortious act of said corporation on account of injuries inflicted by one Murray, who was excavating said property under contract, and by means of a blast which injured

defendant's grantor, who was plaintiff in said suit and purchaser at said execution sale. That the funds donated to purchase the lots are about to be diverted. That the plaintiffs are willing to carry out the charitable object.

The complaint concludes with prayer for recovery of possession and all further and general relief.

A demurrer to the complaint was sustained. Plaintiff has appealed.

*R. G. Davies,* for appellant.

The court erred in sustaining the demurrer to the complaint. Even if appellant had not itself been a charitable corporation, but a mere naked trustee, the trust funds could not be held liable for the torts of the corporation's agents. 1 L. R. A. 417. It was not, however, necessary that there be any trustee at all. 95 U. S. 303. The evidence discloses the trust, and that is sufficient. 113 Pa. St. 269. Further, that the trust fund was not subject to the claim of appellees, see Elliott, Priv. Corp. § 19; Fr. Void Jud. Sales, § 35; 27 Am. & Eng. Enc. Law, 50, 51. The trustee had no power to sell where it would prejudice the object of the charity. 17 Ark. 488. A deed was unnecessary where the property was dedicated to public use. 9 Am. & Eng. Enc. Law, 38. The articles of association plainly show that the corporation was a trustee. *Cf.* Sand. & H. Dig. § § 1392, 1426. The fact that dues were collected does not alter this. 86 Pa. App. 306. Further, upon the proposition that the corporation was really a trustee, see 19 Ala. 814; 35 Pa. 316; 4 Ga. 404; 7 Vt. 243; 3 Lead. Cas. R. Prop. 374; 10 Allen, 169; 34 N. J. Eq. 321; 86 Pa. St. 306. s. c. 5 W. N. C. 196; s. c. 3 Lead. Cas. Real Prop. 339, 340, 341; 14 Allen, 539, s. c. 2 Am. & Eng. Lead. Cas. Eq. 18, 24, 25. Further, on the propositions that the corporation was a mere trustee, and that the trust funds are not liable, see: 31 L. R. A., 227; 60 Fed. 365; 41 Ark. 271; 1 Wh. & Tud. Lead. Cas. Eq. 802; Freeman, Ex. § 109; Freeman, Judg. § 356; 93 Am. Dec. 346; 27 Am. & Eng. Enc. Law, 107; 11 Vt. 283; 120 Mass. 432; 60 Fed. 365; 15 N. Y. 620; s. c. 13 N. E. 781; 18 Fed. 221; 32 Pac. 1012; Ell. Priv. Corp., § 19; 4 Wheat. 518; 22 Am. Dec. 236; 31 L. R. A. 227; 26 Am. Dec. 446; 38 Am. Rep. 298. Cases in 86 Ga. 486 and 12 S. C. 882 are not applicable.

*Wood & Henderson,* for appellees.

The appellant was not a public or charitable corporation.  14 Allen, 556; 3 Pom. Eq. Jur. § 1020, *et seq.*; Perry, Tr. § § 697, 710; 44 Conn. 60, s. c. 26 Am. Rep. 424; 132 Mass. 211, s. c. 39 Am. Rep. 445; 29 N. J. Eq. 36; 1 McG. & C. 286; L. R. 9 Ir. 246; 2 Oh. 649; 19 L. R. A. 413; 29 N. J. Eq. 32; 35 Atl. 1064; 42 N. E. 1130; 15 N. E. 505; 107 U. S. 174; 111 Mass. 267; Thomps. Corp. § § 8143, *et seq.*; 4 Wheat. 516; 12 Ark. 353; Sand. & H. Dig. § 1419; Thomps. Corp. § 6466. The property was not excepted by the statutes (Sand. & H. Dig. § § 3049, 3053, 3054) from execution, and must therefore be subject to same. Thomps. Corp. § 7847; 75 Am. Dec. 518; 26 Am. Dec. 561; Fr. Ex. § 348; 57 Ga. 340, 346; 5 Ired. L. 297; 12 L. R. A. 852; 13 L. R. A. 668; 69 Ark. 68; 57 Ark. 445; 62 Ark. 481. A trust cannot be engrafted by parol upon the property, as against creditors of the legal owners. Sand. & H. Dig. § 3480; 57 Ark. 637; 67 Ark. 530; 59 Ark. 71. Appellant was liable for the negligence which is the foundation of appellees' claim. Sand. & H. Dig. § § 1419, 1393, 1397; 12 R. I. 411, s. c. 34 Am. Rep. 675; 12 S. E. 882; 31 L. R. A. 227; 60 Fed. 365; 29 Am. Rep. 17; 36 Am. Rep. 17; 32 Am. Rep. 408; 37 Am. St. Rep. 24; 10 N. Y. Supp. 115; 28 Atl. 32; 4 Oh. 399; 36 Am. Rep. 508; 51 Am. Dec. 284; 18 Am. St. Rep. 284; 53 Ind. 337; 3 Md. 431.

*Wood & Henderson, Ratcliffe & Fletcher,* for appellee, on motion to reconsider.

The court erred in holding that appellant holds only a naked legal title to the property.  1 Beach, Trusts, § 554; Tied. Real Prop. § 515; 4 Wheat. 636; Mech. Ag. § 733; 86 Ga. 486; 2 Beach, Trusts, § § 402, 407; 1 Lewin, Trusts, 221; 83 N. C. 65; 17 Ark. 483; 86 Pa. St. 306; 57 Ark. 445; 145 Ill. 628; 151 Mass. 365; 69 Ark. 68; 56 Ark. 354; 50 Ark. 141.

*R. G. Davies,* for appellant.

Trust funds are not liable for the trustee's tort.  86 Ga. 486; 60 Pa. St. 30; 3 W. & S. 27; 2 Grant, 75; 183 Mass. 126; 68 Ohio St. 236; 7 Ohio St. 114.

HILL. C. J.  The Reporter will state the facts showing the object and purposes of the corporation, its organization and

plan, and the history of the acquisition of the property in question.

The court holds on the facts presented that the property in controversy was acquired by the appellant corporation for the purpose of establishing and maintaining thereupon a reading room and library for the benefit of the members of the corporation and "of the multitude of people who visit" the city of Hot Springs "in search of health and pleasure." Under these facts, is such property subject to sale under execution on a judgment rendered against the corporation for a tort? The judgment was recovered for an injury received by reason of a blast, while excavating upon the property under a contract calling for such excavation.

In section 3049, Sand. & H. Dig., is an enumeration of property subject to execution, which includes all real estate whereof the defendant or any person for his use was seized in law or equity at the time of the rendition of the judgment. Sections 3052-3055 exempt from execution property which would otherwise fall within the prior section. Such property as this is not *eo nomine* within the exception, and the question arises whether it is within the definition of property subject to execution. That brings into consideration the nature of the title held by the corporation.

It is insisted that this is a charitable trust, and on the other hand that it is not. "Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick, and the afflicted; and all gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire them applied." 2 Perry on Trusts, § 687.

The Statute of 43 Eliz., c. 4 (1601), was the culmination of the law of England on the question of charitable trusts, and has generally been followed by construction or statute in this country. 1 Beach, Trusts and Trustees, § 320. Therein are enumerated the various objects and purposes of charitable trusts. Libraries are not specifically mentioned, but the maintenance of various educational institutions and scholarships and like objects of benevolence and public utility are enumerated; and it has been uniformly held that there are many such trusts not within the strict letter of the statute, but which fall within its spirit, equity

and analogy, and are considered charitable trusts. 2 Perry on Trusts, § 692; Hill on Trustees, p. 453.

Public libraries fall within the spirit and analogy of charitable trusts. 2 Perry on Trusts, § 700, and authorities in note *a*; *Donohugh's Appeal*, 86 Pa. St. 306; *Crerar* v. *Williams*, 145 Ill. 625; *Corey Library* v. *Bliss*. 151 Mass. 365; 1 Beach on Trusts, § 317.

The nature of these trusts is thus expressed: 'In distinction from an express private trust, which, by the definition, is designated for the benefit of one or more individuals, the trust for charitable purposes is a public trust, and from the nature of the case the benficiaries are, to a greater or less extent, unknown or indefinite. 1 Beach, Trusts and Trustees, § 322.

The charitable trusts may be administered by a corporation organized for that purpose, and it becomes a mere agency for the handling of the trust property. 1 Beach, Trusts and Trustees, § 334.

This corporation belongs to this class, and holds only a naked legal title to the property, the beneficial interest being owned by the public. "While, as a general rule, all legal estates in land are subject to execution, the rule is not applicable to the detriment of persons for whose benefit the legal estate may be held. It is only when the holder of the legal title has some beneficial interest that it can be sold under execution. If he is a mere trustee, or if, for any reason, he holds the bare legal title for the benefit of another, an execution sale against him transfers no interest whatever." 2 Freeman on Executions, § 173.

In *Grissom* v. *Hill*, 17 Ark. 483, it was held that where there was a deed to trustees for a public charity, with or without a prohibition in the deed against a sale, if the sale would defeat the object of the charity, the trustees would have no power to sell, and their sale would pass no title. It was further held that the trustees could not indirectly do what they could not do directly, and that sales made in pursuance of judgments growing out of improvement contracts could not operate to take the property away from the trustee. Certainly, if the trustees could not defeat the trust by default in contractual obligation, they should not be allowed to defeat it by default

in not exercising proper care whereby parties were injured through negligence.

In the Grissom-Hill case a sale under a mechanics' lien on a church house was defeated on this principle. It was further said in that case that charitable trust property was not secured from all transfers by operation of law; that, unless exempted, it would be subject to sale for taxes and other public charges, because provision for the support of the Government was paramount. The Constitution of 1874 removed this possibility of defeating public charities, and expressly exempted libraries and other public charities from taxation. Art. 16, § 5.

Therefore, it follows that the property in question was not subject to execution and sale, and the appellees derived no title through the sale.

The judgment is reversed, and remanded with directions to overrule the demurrer and for further proceedings.

WOOD, J., disqualified. McCULLOCH, J., not participating.

## ON REHEARING.

### Opinion delivered March 11, 1905.

HILL, C. J. On the rehearing the court has made an exhaustive investigation of the authorities touching the liability of charitable corporations to judgment and subjection of their property to execution for the torts of their officers or employees.

The weight of English and American authority is that charitable corporations are not liable for the negligence of their officers, agents and employees. *McDonald* v. *Hospital,* 120 Mass. 432; *Benton* v. *Hospital,* 140 Mass. 13; *Union Pacific Ry.* v. *Artist,* 60 Fed. Rep. 365; *Downes* v. *Harper Hospital,* 101 Mich. 556; *Williams* v. *Industrial School* (Ky.), 23 L. R. A. 200, and exhaustive note reviewing authorities; *Perry* v. *House of Refuge,* (Md.), 52 Am. Rep. 495; *Hearns* v. *Waterbury Hospital* (Conn.), 31 L. R. A. 224; *Van Tassell* v. *Hospital,* 15 N. Y. Sup. 620; *Collins* v. *Hospital,* 69 N. Y. Sup. 106; *Fire Ins. Patrol* v. *Boyd,* 120 Pa. St. 624; *Murtaugh* v. *St. Louis,* 44 Mo. 479; *Duncan* v. *Freidlater,* 6 Clark & F. 894; *Halliday*

v. *St. Leonard's Vestry,* 11 C. B. N. S. 192; *Herriott's Hospital* v. *Ross,* 12 Clark & F. 507.

The cases supporting the liability to suit and judgment are collated and discussed by the Rhode Island court in *Glavin* v. *Rhode Island,* 12 R. I. 411, s. c. 34 Am. Rep. 675. Another line of cases is found in *Powers* v. *Massachusetts Homeopathic Hospital,* 109 Fed. Rep. 294, affirming the same case in 101 Fed. Rep. 896.

Judge Lowell, speaking for the Federal Court of Appeals of the first circuit, drew a distinction in classes of negligence, in some holding the charitable corporations were liable, for instance, in negligently selecting its officers or agents, or negligently overflowing neighboring land, while in others they were not liable.

The case at bar comes in different aspect from any of the cases examined. Here the question of liability to judgment has been determined by the rendition of judgment, and the judgment is not here for review. Therefore the best light to be thrown on this case is from those jurisdictions where such judgments are properly obtainable, in order to ascertain what may be subjected to its satisfaction; in the other jurisdictions the question cannot arise. Judge Lowell, in the Powers case, *supra,* said:

"There is no less impropriety in diverting funds impressed with a trust for the benefit of individuals than in diverting those impressed with a trust for a public charity. Yet the effectual though indirect liability of a private trust fund for the torts of those concerned in its management is undoubtedly recognized. It is true that a suit can not be maintained against a trustee, as such, for torts committed in the management of the trust property. The suit is brought against the trustee as an individual. The judgment and execution were against him individually. When these are satisfied, however, the trustee is reimbursed from the trust estate, unless individually at fault. (Citing authorities.) The trust fund is protected from immediate levy to satisfy the execution, not because of its complete immunity, but rather from technical reasons connected with the legal estate of the trustee in the property. Its technical immunity affords it no ultimate protection. * * * The merely technical immunity of a pri-

vate trust fund from execution upon a judgment recovered in an action of tort affords no real reason for the real immunity of the funds of a charitable corporation where the technical considerations do not apply. That the funds of a public charity may be diverted to pay for some torts committed in the administration of the fund has often been decided."

He further limits the charge against a trust fund to a fund unconnected with the trust property.

The Rhode Island court in the Glavin case, *supra,* said: "We also understand that the doctrine is that the corporate funds can be applied, notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts, and is incident to them. We do not understand, however, that the corporate property is all equally applicable. For instance, in the case of *Mersey Docks* v. *Gibbs,* (11 H. of L. 686), it was not decided that the docks themselves could be resorted to, but only the unapplied funds which the board then had or might afterwards acquire. So in the case at bar it may be that some of the corporate property, the buildings and grounds for example, is subject to so strict a dedication that it can not be diverted to payment of damages."

Thus it is seen that, owing to its strict dedication to the trust, the domicil of the charity is not subject to process, or, as Judge Lowell puts it, there is a technical immunity of the trust property itself from execution. This immunity of trust property from execution was the controlling thought in the original opinion in this case, and is supported by these authorities, additional to those there referred to. 1 Black on Judgments, 420, 421; 2 Freeman on Judgments, 357, 368; 17 Am. & Eng. Enc. Law (2 Ed.), p. 778; 2 Freeman on Executions, § 172.

Therefore, it follows that this immunity of the property strictly dedicated to the charity is an insurmountable obstacle to execution, even in those jurisdictions where judgments for torts are permitted, and where satisfaction may be had for them out of funds belonging to the charity. The reason given in some of the cases denying liability to suit is that, should judgment be rendered, the property would not be subject to it, and therefore it is unavailing to permit judgment.

It has been insisted that the judgment concludes this question;

but, as shown, the judgment only concludes a liability to be worked out of assets not immune from execution, in the jurisdictions where the corporations are subject to judgment.

From the very nature of the issues involved in the suit for the damages there could be no issue as to what property should be subject to a possible judgment therein sought to be recovered.

The Supreme Court of the United States said: "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *So. Pac. Rd.* v. *U. S.,* 168 U. S. 1. This is considered the first rule on this subject, and the second is thus stated: "A judgment rendered by a court of competent jurisdiction on its merits is a bar to any future suit, between the same parties or their privies, upon the same cause of action, so long as it remains unreversed." 2 Black on Judgments, § 504.

In the suit terminating in judgment here there could not possibly have been "distinctly put in issue" the subjection of this property to an execution on the judgment then sought to be recovered; and there could by no possibility have been a trial therein on the merits as to the liability of this property to the judgment then sought to be obtained. A judgment does not operate upon property which is by law exempt from seizure and sale. 1 Black, Judgments, § 424; 2 Freeman, Judgments, § 355; *Cole* v. *Green,* 21 Ill. 104; *Green* v. *Marks,* 25 Ill. 221; *City of Davenport* v. *Peoria Ins. Co.,* 27 Ia. 277.

It is also well settled that when the property is not subject to execution, the execution sale passes no title. *Smith* v. *McCann,* 65 U. S. 398; *Brooker* v. *Carlile,* 77 Ky. 154; *Earle* v. *Washburn,* 89 Mass. 95; *Hancock* v. *Brinker,* 6 Ky. 247; 2 Freeman, Executions, § § 172, 173.

In *Washburn* v. *Earle, supra,* the case arose, as this one, after a judgment in it against a church society, as to whether an execution sale had passed the property to the purchaser, and it

was held that the property was not subject to the claim of the judgment creditors, that there could be as to them no fraudulent conveyance of it, and that the execution sale had passed no title. This case is similar to *Grissom* v. *Hill,* 17 Ark. 483, where the contest arose after judgment, and it was held, owing to the trust created under which the church property was held, that no title passed by execution sale. There was another question in that case as to the restraint on the alienation of the property, and the decision rested on both grounds, and each of those were asserted successfully against the judgment creditor, who was asserting title acquired by execution sale of the church property.

From these authorities it is clear that the judgment has not concluded any question as to what property is subject to it.

Finding the property in controversy dedicated to the purpose of the charity, according to the allegations of the complaint, its intended domicil in fact, it is considered that an execution on the judgment in question passed no title to the purchaser.

The motion is denied.

Mr. Justice BATTLE concurs in this opinion; Mr. Justice RIDDICK concurs in the judgment.

Mr. Justice McCULLOCH dissents, and Mr. Justice WOOD is disqualified, and did not participate.

RIDDICK, J., (concurring.) The question presented to the court by this appeal arises on a demurrer to the complaint. It has given us some trouble to decide, and it seems to me that the chief cause of this trouble is that counsel for plaintiff has undertaken in the complaint to set out, not only what may be termed the essential or ultimate facts, but also the evidence by which he expects to prove those facts, and in addition thereto he has anticipated the defense, and makes a suggestion as to what that will be. Now, while the rule may be to some extent different in equity, at law it is only necessary to set out in the complaint the essential facts which go to make the plaintiff's case. It is neither proper nor necessary to set out facts which are only evidence of the essential facts. "It would," says Prof. Bliss, "be folly to take issue on the latter; they are relevant but not issuable facts, for the facts in issue may be stated truly, though sustained by other evidence than that anticipated by the pleader." Bliss, Code Plead. (2 Ed.), 206.

The same thing may be said to the suggestion contained in the complaint as to the defense that may be made to this action, for "at law one is never expected to state matters which should come from the other side; it is sufficient for each party to make out his own case." Bliss, Code Plead. (2 Ed.), § 200.

The petition of certain women to Congress to be allowed to purchase the lots sued for, the report of a committee of Congress on that petition, the act of Congress passed to permit the sale of the property, the articles of incorporation of plaintiff granted under the laws of this State, the constitution of the association, are all set out at length in the complaint, besides a statement in reference to the probable claim to the lots that may be set up by defendants. These matters are all obviously improper in the complaint, and should not have been inserted. But they are mere surplusage, and do not affect the decision here, for, where a complaint is otherwise sufficient, the fact that it contains irrelevant and redundant matter does not make it bad on demurrer. What we have to determine here is whether, disregarding the surplusage, the complaint is sufficient in substance. If it is, the demurrer should be overruled.

The main objection made to the complaint in this case is that it does not state facts sufficient to constitute a cause of action. It is then a matter of no moment that the complaint may be awkwardly drawn, and contains irrelevant and redundant matter that ought not to have been put in, for these matters can be corrected by motion.

"On a demurrer to a complaint as defective in that it does not state facts sufficient to constitute a cause of action, the complaint must be liberally construed, and all its allegations for the purpose of the demurrer taken as true. And such demurrer can be sustained only where the complaint presents defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action whatever." 6 Am. & Eng. Enc. Law, 546, and cases cited.

This is an action of ejectment, and, speaking of that kind of an action, this court, in *Fagg v. Martin,* 53 Ark. 453, said that "it was sufficient for the plaintiff to allege in his complaint his ownership of the land, and exhibit the deeds and evidence of title upon which he relied."

Now, if the facts alleged in the complaint are true, the plaintiff holds the legal title to this property. The complaint alleges that plaintiff is a mere trustee, and holds only the bare legal title to this property, and holds that for charitable purposes alone, but it alleges that it has the right to the possession of the property. In addition to this, plaintiff exhibits the patent from the Government, upon which it relies, showing title to the land sued for. Taking the allegations of the complaint as true, it seems to me that it shows a cause of action. *Fagg* v. *Martin, supra.* So far as the complaint undertakes to anticipate the defense, and to suggest what the claim of the defendants will be, I think that is nothing more than surplusage, and should be disregarded. It will be time enough to consider that matter when the issue is made by the answer of the defendants. The allusion in the complaint to what plaintiff supposes will be the defense is too vague and indefinite to justify us in undertaking to pass on the merits of the case as it is now presented. While therefore I concur in the opinion of the Chief Justice that the demurrer should have been overruled, I express no opinion as to whether the title which the plaintiff shows in its complaint could be cut off by a judgment against plaintiff for tort and an execution and sale of such property thereunder; for it seems to me that those questions are not yet before us.

To repeat, the question here is whether, rejecting the surplusage contained in the complaint, the material allegations thereof, when taken to be true, show that plaintiff was entitled to recover possession of the land described. I think they do, and for that reason only concur in the judgment of reversal.

McCULLOCH, J., (dissenting.)   I did not participate in the original consideration of this case, but on the petition for rehearing have considered it, and am unable to concur in the views of the majority of the court. I think that the judgment rendered against appellant establishing the liability is enforceable, and that the property in controversy was properly sold to satisfy the judgment.

Appellant is a corporation organized for benevolent purposes under the provisions of subdivision IX of chap. 31, Kirby's Digest. A section of the statute on that subject reads as follows:

79—35

"Such corporations shall have such powers of suing and being sued, buying, holding and selling property, real and personal, and of otherwise carrying out the purposes and objects of their organization as are possessed by other corporations, and which may be necessary to their efficient management and the promotion of their purposes." Kirby's Digest, § 943.

The preamble to the constitution recites that the purpose of the association is for "organizing a reading room and library for our own benefit and that of the multitude of people who visit our city in search of health and pleasure." The constitution provides, among other things, that "ladies may become members by signing the constitution and paying an initiation fee of $2 annually and 25 cents monthly dues; that any gentleman who pays the sum of $50 at any one time shall be entitled to honorary life membership in the association; that any one who pays the sum of $250 shall be constituted a life patron, and shall be entitled to all the privileges of membership except voting in business meetings; that gentlemen may become associate members of the association by the annual payment of $5."

The patent issued by the United States to appellant conveying the lots in controversy is absolute in terms, and conveys the title in fee simple without reservation or condition, except a proviso in accordance with the form usually adopted in patents to lands in the vicinity of the celebrated Hot Springs, prohibiting the grantee and its successors and assigns "from ever boring thereon for hot water."

I think that, according to the decided weight of authority, corporations organized as agencies purely for charitable or like purposes are not liable for torts of their servants. 1 Jaggard on Torts, pp. 187, 188; 6 Cyc., p. 975; *McDonald v. Mass. General Hospital,* 120 Mass. 432; *Powers v. Mass. Homeopathic Hospital,* 109 Fed. 294; *Perry v. House of Refuge,* 63 Md. 20.

But we are precluded from inquiry as to liability of appellant by the judgment of a court of competent jurisdiction adjudging its liability. The only question is whether or not the judgment can be enforced against the property of appellant. It seems to me that the statute conferring upon such corporations the power to sue and imposing upon them liability is conclusive of the question of the right of a creditor to enforce payment of his debt out

of the property of the corporation after the liability has been established by a court of competent jurisdiction.

The general rule is that all property is subject to sale under execution for payment of debt. Our statute so declares: Kirby's Digest, § 3228. This applies to corporations as well as individuals. Judge Thompson says: "The *jus disponendi* is involved in the very idea of property, and it is well said that, in the absence of some express legal exemption, it is an inseparable incident to property, legal or equitable, that it should be liable to the debts of the owners, as it is to his alienation." 6 Thomp. on Corp. § 7847.

Judge Freeman in his work on Executions, vol. 2, § 172, states the general rule with reference to property subject to execution, thus:

"It is ordinarily sufficient to inquire whether the interest sought to be sold is real property, and, if so, whether the defendant in execution has a legal estate therein. These questions being answered in the affirmative, the property or the defendant's interest therein must be regarded as subject to execution unless it falls within some exception hereinafter stated. The right to subject real property to execution is not dependent upon the character or capacity of the person, whether natural or artificial, to whom it may belong, except that they must be persons against whom a judgment may properly be enforced and its payment coerced; and they must have a beneficial interest in the property, and not hold it merely upon some trust, public or private."

This leads us to a consideration of the question whether the appellant, or its property which was sold under execution, falls within any of the recognized exceptions to the general rule making all property of individuals and corporations subject to execution.

This court held in *Grissom* v. *Hill*, 17 Ark. 483, that the trustees of a church, under a deed which provided that the "lot of land is never to be sold or to be used in any other way only for the use of a church," could not create a charge upon the lot by contract for the erection of a house thereon, so as to authorize the mechanic to obtain a lien and sell the lot in payment thereof. But in the case at bar, the conveyance under which the library

association obtained title contained no restriction, limitation nor condition. It is absolute in form, and conveys the title in fee simple. It is true that the act of Congress authorizing the patent to be issued upon payment of the appraised valuation of the lot recites the reasons therefor, but it imposes no conditions upon the use of the property.

In the case of *Wright* v. *Morgan,* 191 U. S. 55, where lands were patended to the city of Denver pursuant to an act of Congress "to enable the city of Denver to purchase certain lands in Colorado for a cemetery" at the minimum price, "to be held and used for a burial place for said city and vicinity," and where by a subsequent act the city was authorized to "vacate the use of said lands, or any portion thereof, as a cemetery, for a public park or grounds," it was held that the title was absolute, and that the city had the power to alienate the lands so patented. The court, speaking through Mr. Justice Holmes, said: "If the legal title was in the city, it was an absolute title. In view of the extreme unwillingness of courts to admit the existence of a common-law condition, even when the word *condition* is used, it needs no argument to show that there was no condition or limitation here. Little more needs to be said to show that the act of Congress did not make the land inalienable at common law. We need not consider whether the act could have that effect upon land within a State, when the conveyance was absolute, and was made to a citizen or instrumentality of the State; we express no opinion upon the point. It is enough that it did not purport so to restrict the ordinary incidents to title. We should require the clearest expression of such an unusual restriction before we should admit that it was imposed, especially in an ordinary sale for cash. Here the act probably meant no more than to explain the motive for a sale at the minimum price."

The authorities on this subject are fully cited and exhaustively discussed by Mr. Justice White in *Stuart* v. *Easton,* 170 U. S. 383, where it is held that a mere declaration of purpose contained in a patent did not have the effect of qualifying or limiting the estate granted thereby.

It is not to be denied that where the naked legal title to property is held in trust it can not be sold under execution issued on a judgment against the trustee; but that rule does not apply here.

The legal title, and the beneficial interest as well, were vested in the library association, the legal entity against which the judgment was obtained, and there is no beneficial interest separable from the corporate association. The public had no interest in the property or in its use, save such as the corporation, acting through its members and officers, might see fit to bestow from time to time. As is well said by counsel for appellees in their brief: "The association is not a mere agency. It is the thing itself, instituted and organized on its own motion, with all the powers pertaining thereto which an individual would have if he should undertake such an enterprise."

Churches and like associations and corporations, though in a limited sense agencies of the public, are governed by the ordinary rules of law controlling the rights of individuals and other corporations. 2 Kent. Com. § 274; *Robertson* v. *Bullions,* 11 N. Y. 243; *Presbyterian Congregation* v. *Cole,* 2 Grant's (Pa.) Cases, 75; *Fadness* v. *Braundborg,* 73 Wis. 257.

In *Presbyterian Congregation* v. *Cole, supra,* it was held, that a church house was subject to execution, the court saying: "Churches are intended for public benefit; but this is a part of the public interest that is committed exclusively to private enterprise, and governed by the rules and remedies that belong to private relations, and it may well be questioned whether it would be for the public benefit to allow them to disregard their contracts."

Learned counsel for appellant has not cited us to a single authority holding that the property of an association of this kind can not be sold under execution. None are cited in the opinion of the Chief Justice, and I have been unable to find any; therefore I am persuaded that there are none, and that there is no substantial reason why the property of this association should form an exception to the rule that all property is liable to execution against the owner.

The case of *Powers* v. *Mass. Hom. Hospital,* 109 Fed. 294, relied on, apparently, with much confidence in the opinion of the majority, merely holds that "a patient in a public hospital, chartered as a charitable corporation, although under private management, can not recover from such corporation for injuries resulting from the negligence of a nurse employed in its hospital," a

doctrine in line with the decided weight of authority that such corporations are not liable. in suits founded upon torts of its servants.

Nor, to my mind, can any support to the views of the majority be found in the case of *Glavin* v. *Rhode Island,* 12 R. I. ·411, where it is held that such a corporation is liable for torts committed by its servants. I·am unable to see how, from a doctrine that such a corporation *is* liable in judgment for its torts, a theory can be worked out that its property *is not* liable to sale under execution issued upon the judgment.

I am therefore of the opinion that the property was legally sold under execution, and that the purchasers at the sale took a good title.