WORD *v.* SPARKS.

4-3826

Opinion delivered April 22, 1935.

894

*Brundidge & Neelly,* for appellant.

*S. F. Morton, Cul L. Pearce* and *Gaughan, Sifford, Godwin & Gaughan,* for appellee.

HUMPHREYS, J.  Appellee brought suit on May 9, 1934, against Galloway Woman's College in the chancery court of White County to obtain judgment against it, and an equitable lien upon all its trust funds for the amount of a conditional endowment of United States Liberty Bonds delivered by her husband, Dr. J. E. Sparks, to said college under the allegations that the condition in the endowment contract had been broken, which entitled her to the return of the bonds or their value together with accumulated interest thereon until November, 1923.

It was alleged in the complaint that the bonds were delivered under a conditional written contract by the terms of which her husband, J. E. Sparks, was to deliver appellant $14,000 in United States Liberty Bonds bearing interest at the rate of 4¼ per cent. per annum, with accumulated interest of $149.27, as an endowment, provided that, when the interest added to the principal should amount to $17,143, said college should pay to the donor, as interest on said sum, $600 semi-annually during his life and, in the event of his death, the same amount semi-annually to appellee during her life, and upon her death, that the bonds and interest thereon should vest in said college on condition that, in case said college should fail to make the semi-annual payment of $600 to the donor or appellee, if she should survive him, then either might revoke the donation and retake possession of the

funds ·conditionally given to the college upon written de- mand therefor if the college should remain in default in the payment thereof for sixty days after demand.

It was also alleged that, in violation of the trust agreement, appellant sold the bonds and used the pro- ceeds in the construction of a heating plant in the build- ings owned and used for college purposes, thereby en- hancing the value thereof, and that the plant cannot be removed without great damage to the buildings, and to the heating plant, practically destroying said heating plant.

It is also alleged that, after the heating plant was completed and became a part of the buildings, the college borrowed $90,000 from Booth Brothers and mortgaged almost all of its buildings and other real estate to secure the payment of the loan, and that the mortgagees made said loan with full knowledge of the existence of said written endowment contract between her husband, J. E. Sparks, and the college, and that they knew the proceeds from the sale of the bonds were used in the construction of the heating plant. It was also alleged that appellant began, in the year 1923, to make the semi-annual pay- ment of $600 to her husband and continued to make the payments until his death on the 16th day of August, 1932, and continued to make them to her until January, 1934, at which time it made default and continued in default more than sixty days after written demand to pay· same.

It was also alleged that the college owned endow- ment funds in large amounts not included in the mort- gage to Booth Brothers.

The prayer of the complaint was for a judgment for the amount of the bonds and accumulated interest until the year 1923, and that a lien be declared on all the trust or endowment property owned by the college to pay same, superior to the lien of the mortgagees or other creditors.

Shortly after appellee filed her complaint, the Security Bank and the Bank of Searcy filed a suit in said chancery court against Galloway Woman's College alleging that it was an insolvent corporation and praying that its affairs be wound up and that a receiver be ap-

pointed to take charge of all its property. A receiver was appointed, who took charge of all of its property, including the property mortgaged to Booth Brothers.

The receiver filed an answer stating that, after the execution of the written endowment contract between Dr. Sparks and the college, Dr. Sparks agreed that the bonds might be sold and the proceeds used in the construction of a heating plant for the college, and that, by doing so, he lost any equitable lien he might have under said contract on the assets of the college.

Booth Brothers intervened and set up their mortgage and prayed for a foreclosure against the property described therein to satisfy the indebtedness the college owed them, alleging that they knew nothing of the written endowment contract between Dr. Sparks and said college at the time the mortgage was executed to them. The suits were consolidated and tried upon the several pleadings and the testimony adduced, resulting in a decree of foreclosure in favor of Booth Brothers against the property described in the mortgage to satisfy the indebtedness of the college to them, from which there is no appeal; also a decree for a lien on all the other trust funds owned by the college and evidenced by the trust account of the college in favor of appellee to pay for the bonds and accrued interest up to 1923, which had been used in the construction of said heating plant, from which the receiver of said college has appealed.

The endowment contract was introduced in evidence and bears date of January 9, 1920. It was signed in triplicate by J. E. Sparks as party of the first part and the college, by its president and secretary, as party of the second part. It provided for the proper transfer of $14,000 of United States Liberty Bonds bearing interest at the rate of 4¼ per cent. per annum in trust for the college upon condition that, when the interest added to the principal should amount to $17,143, then the college should begin and continue to pay 7 per cent. per annum thereon, payable semi-annually, to Dr. Sparks during his life and to appellee, his wife, for her life, should she survive him, and that, when both should die, the funds and accumulated interest should vest in the college, provided

the interest of $600 semi-annually had been paid, but, in the event that the college should default in the payment thereof for sixty days after written demand, the donee, if living, and his wife if she survived him, should have the right to revoke the donation and retake possession of the funds. It was specifically provided in the contract that the bonds were a gift to the endowment fund and should be held in trust and used for that purpose only in case semi-annual interest had been paid. The bonds were transferred and delivered to the executive committee of the college, and soon thereafter were sold and the proceeds used for the construction of a heating plant for the college, which greatly enhanced the value of the buildings in which it was installed, and it would be impracticable and destructive to the heating plant to tear it out, and would reduce the value of the buildings to do so. The buildings in which the plant was installed were included in the mortgage to Booth Brothers. J. M. Williams, who was the president of the college on January 9, 1920, testified that Dr. J. E. Sparks wrote him a letter on January 6, 1920, stating that for a limited time they might convert and use the proceeds of the bonds in constructing a heating plant for the college, something like two or three years; that he, Williams, suggested attaching the letter to the contract as a part thereof, but it was never attached and cannot be found; that he always regarded the funds derived from the sale of the bonds as a sacred trust fund. It appears that the endowment fund was kept in one account on the books of the college, and that all the property of every kind belonging to the trust or endowment fund was taken over by the receiver. In 1923 the college paid the first semi-annual installment of interest to Dr. J. E. Sparks and continued to pay same promptly to him until his death, and paid it to his wife, appellee, until January 1, 1934, when it made default, and continued in default more than sixty days after demand to pay same before she brought this suit to revoke and retake the funds.

Appellant contends for a reversal of the decree making appellee a preferred creditor to the extent of her

claim in the trust or endowment funds belonging to the college in the hands of the receiver.

The letter of Dr. Sparks referred to by Dr. Williams authorizing the sale of the bonds, and his oral testimony to the effect that Dr. Sparks agreed for him to sell the bonds and use the money for three or four years in order to construct a heating plant for the college did not, and could not in any wise change the written contract. The consent and letters relating thereto occurred, according to the testimony of Dr. Williams, before the contract was signed. All agreements reached between the parties prior to the execution of a written contract are presumed to be incorporated therein. Again, written contracts which have been completed cannot be contradicted or materially changed by oral evidence. The oral evidence as to the use of the bonds is in open conflict and contradictory of the use to be made of the bonds in the writing. Again, a trustee cannot sell the trust fund unless such authority was conferred on him by the creator of the fund, or unless all the beneficiaries consent thereto. 65 C. J. 730; 26 R. C. L. 1283. According to the undisputed evidence, appellee did not consent to a sale of the bonds, and never knew they had been sold until after the college defaulted in the payment of interest to her in January, 1934. It is argued, however, that appellee's remedy and only remedy was and is to enforce a lien upon the heating plant which was constructed with the money derived from the sale of the bonds, and that she cannot now do that because the buildings served by the heating plant have been mortgaged to an innocent and *bona fide* purchaser for value; that for these reasons appellee must be treated as a general and not a preferred creditor. Appellant relies upon the rule announced in the case of *Rainwater* v. *Wildman,* 172 Ark. 521, 289 S. W. 488, as supporting this argument or contention. The Rainwater case cited is unlike the instant case in that the trust fund in the Rainwater case was not traced in any form into the hands of the receiver; whereas all property of the college, including the heating plant, came into the possession of the receiver. In the Rainwater case, the notes claimed were not among the assets of the bank when the receiver

took the property over, and never swelled the assets of the bank. In the instant case, the heating plant constructed with the trust funds greatly enhanced the assets of the college and necessarily swelled them. This plant could not be torn out and removed without destroying its value as well as impairing the value of the buildings. The bonds or trust funds were not dissipated and wasted, but are still a part of the assets of the college, and a separation of the funds is impossible. The facts bring it within the rule announced in the case of *Cavin* v. *Gleason*, 105 N. Y. 262, (11 N. E. 506) as follows:

"So, also, if it appears that the trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with the equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property or funds, or proceeds of the trust property, entering into or constituting a part of the assets." This rule was quoted with approval in the Rainwater case, *supra*.

The trial court was correct in declaring a prior lien to that of general creditors upon all the trust funds belonging to the college in the hands of the receiver to satisfy appellee's claim, except the property mortgaged to Booth Brothers, and the decree will therefore be affirmed. It is accordingly done.

BAKER, J., (dissenting). It is not my purpose in writing this dissent to attempt any elaborate display of authorities.

I mean only to show my disapproval of the majority opinion. I think it is demonstrably unsound.

The undisputed evidence in this case shows that the fund or money sued for as a trust fund had been misapplied, or at least used in the installation of a heating plant. It may be that not all of the fund was so used, but such a substantial portion thereof as would make it unnecessary to attempt any discovery of the small remainder or balance.

Upon the tracing and location of this fund in the heating plant, which was a part of the real property, there was but one remedy open to the claimant, Mrs. Sparks. She had a right to follow this fund and the further right to have enforced against it, or against any property in which it was invested, a lien in order that she might be protected. It is no answer to this contention to say that there was a first mortgage upon this real property in which the heating plant was located. That would not give her any lien or right against any other property into which this fund had never entered.

This conclusion of the majority must be recognized as erroneous when we consider that other parties have claims, not inferior in any respect to that of Mrs. Sparks, and which they can rightfully assert against the property in the hands of the receiver, which funds make up the entire property against which Mrs. Sparks was given a lien. The majority did not intend, by declaring this lien in her favor, to make it against all of the other property in the hands of the receiver superior to any other claim, but such is the effect of the decision, and it results in the same degree of unfairness as if the intention did exist. When all other claims to this fund in the hands of the receiver are paid, claimants must take proportionally less than what is due them, because their money has been taken to pay Mrs. Sparks in full, while her money must remain lost in the heating plant after she shall have been paid. In addition, that balance that remains will be charged with the costs of all the proceedings, including a receiver's fee, before other claimants will share therein.

Therefore the error of the majority makes Mrs. Sparks the favorite beneficiary, preferred over other claimants occupying relatively no worse position than she does, who must lose by reason of this error.

Moreover, in addition to not being warranted by law, the result is grossly inequitable.

SMITH, J., concurs in this dissent.