HELTON *v.* SISTERS OF MERCY OF ST. JOSEPH'S
HOSPITAL.

5-2501                                          351 S. W. 2d 129

Opinion delivered October 30, 1961.

[Rehearing denied December 11, 1961.]

*McMath, Leatherman, Woods & Youngdahl,* and *Belli, Ashe & Gerry,* for appellant.

*Wootton, Land & Matthews,* for appellee.

*Spitzberg, Bonner, Mitchell & Hays, amicus curiae* on behalf of Arkansas Hospital Association.

SAM ROBINSON, Associate Justice. This action arose out of injuries sustained by Sharon Diane Helton, a minor, while being examined at appellee's hospital in Hot Springs. The suit was filed by the little girl's father as next friend, and by the father individually, against the Sisters of Mercy of St. Joseph's Hospital in Hot Springs. On November 22, 1960, appellant filed a tort action in the Garland Circuit Court, alleging that on the 12th day of November, 1959, Sharon was delivered to St. Joseph's Hospital so that a physical examination could be made; that she was given a general anaesthetic and placed upon a "cystotable in the usual manner required by these examinations"; that employees of the hospital carelessly and negligently injected sodium hydroxide into the bladder of the little girl, instead of

sodium iodide; that as a result of such negligence Sharon suffered severe permanent injuries, among which was the destruction of her bladder; that it is now necessary for her to wear an artificial bladder on the outside of her body, and she will have to wear it for the rest of her life. The complaint prays for judgment in the sum of $386,250. In response to the complaint, the defendant hospital filed a motion to dismiss, alleging that it is a charitable institution and that as such it is not liable in tort.

On January 25, 1961, appellant filed a second suit against appellee, alleging the same injuries and the same circumstances involved when the injuries were sustained, but instead of alleging that the injuries were caused by the negligence and carelessness of the employees of the defendant hospital, the complaint states "that on or about November 12, 1959, the plaintiff, Sanders Helton, entered into a contract with the defendant under the terms of which for a good and valuable consideration the defendant undertook to furnish to defendant's daughter, Sharon Diane Helton, an operating room, proper personnel and proper facilities for a cystogram and cystoscopy on plaintiff's daughter. The defendant undertook that the operating room would be safe and suitable, and that its agents, servants and employees would perform their duties in a reasonable and proper manner and that the said Sharon Diane Helton would be fully protected against all harm that might be reasonably anticipated and forestalled by normal hospital operating procedures. That plaintiff Sharon Diane Helton was a third party beneficiary of said contract."

By agreement of the parties the cases were consolidated. Defendant filed a motion to dismiss the second suit on the ground that although plaintiff had attempted to allege a breach of contract, the complaint nevertheless sounds in tort and that defendant is therefore not liable.

Defendant produced evidence by way of dispositions going to prove that the hospital is a public charity. Although given ample opportunity, plaintiff produced no evidence in contradiction of defendant's testimony on that point. After considering the evidence on the proposition of whether the hospital is a charitable institution, and the argument of counsel, the trial court granted the motions to dismiss both cases. Mr. Helton on behalf of his minor daughter and himself has appealed.

There are three questions involved:

(1) Is appellee, "Sisters of Mercy of St. Joseph's Hospital", a public charity as a matter of law, according to the undisputed evidence?

(2) Of course if it is not a public charity, it is liable in tort. On the other hand, is it liable in tort *even if it is* a public charity?

(3) If the hospital is a public charity and not liable in tort, is it liable on the alleged contract?

We will deal with the questions in the order named. First, is the hospital, according to the evidence, a public charity as a matter of law? The answer is yes. There are several things that inevitably lead to this conclusion. The articles of incorporation provide: "The purpose and essence of this corporation is and shall be purely benevolent, charitable, religious and philanthropic, and it is expressly declared and provided that this Corporation is not for gain or individual profit, and that none of its property, real, personal or mixed, shall ever be used or expended except in carrying into effect the legitimate ends and purposes of its being, and that no person or member shall gain or derive individual profit therefrom." All taxing authorities consider it a charitable institution; it pays no taxes; it is exempt from sales tax and state and federal income taxes. It is sponsored by the Sisters of Mercy, a Catholic order, but its doors are always open to anyone, regardless of creed, needing hospitalization. No one has ever been turned away be-

cause he could not afford to pay. No one has ever made one dime profit out of the institution. The Sisters who work at the hospital receive no pay. Over a five-year period the actual physical labor performed for the hospital by the Sisters, figured on a labor basis alone, was worth $170,000 to the institution. During the same period, $328,373 in cash was donated to the hospital by charitably inclined people. True, the hospital has accumulated the sum of about $600,000, which it hopes to use in expanding and improving its facilities, but if it had been compelled to pay taxes and had not had the services of the Sisters donated as charity, and the gifts of money, there would be no surplus; in fact, the hospital in all probability would be bankrupt.

In addition, a matter of considerable weight to be considered in reaching a conclusion as to whether the hospital is a charitable institution is the fact that the same hospital has heretofore been declared by this Court to be a public charity. *Hot Springs School Dist.* v. *Sisters of Mercy,* 84 Ark. 497, 106 S. W. 954. That case was decided in 1907, and there Judge Hart, speaking for the Court, said: "One of the witnesses here said that she had been a member of the Sisters of Mercy for forty years, that the whole object of the order was charity, and that their whole life was devoted to it. In response to the question, 'This order, the Sisters of Mercy, what is the general work of the order, and to what do your vows pertain?' she answered, 'To the poor and sick and educational.' In this case the buildings were constructed and fitted for use solely as a public hospital. The members of the order receive no compensation for themselves. Their earnings and their lives are devoted to charity."

The evidence in the present case is to the same effect. There is no material difference in the operation of the hospital today and the operation when the above mentioned Sisters of Mercy case was decided many years ago. The hospital was established in 1888 and incorporated under Ark. Stat. § 64-1301 in 1951. In the case

at bar Mother Mary Bertram Daley testified that ''We [Sisters of Mercy] are founded to care for the poor, the sick, and the ignorant. That is a very broad field. We take the vows, one of them being poverty and anything that comes to us by our work or given to us as a gift becomes the property of the community and is used for the works of the community.'' In *Crossett Health Center* v. *Crosswell*, 221 Ark. 874, 256 S. W. 2d 548, there was evidence to the effect that the hospital was not a charitable institution, but here there is no such evidence.

Next, to say that a public charity is liable in tort, we would have to overrule cases holding just the opposite. *Woman's Christian Nat'l. Lib. Ass'n.* v. *Fordyce,* 79 Ark. 532, 86 S. W. 417, and *Fordyce* v. *Woman's Christian Nat'l. Lib. Ass'n.,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A., N. S., 485. *Arkansas Baptist College* v. *Wilson,* 138 S. W. 2d 376, was a suit on a teacher's contract. This Court said: ''If this were an action to recover for the tort of the trustees, then appellants would be protected under the doctrine of the Fordyce case, . . .''

In *Cabbiness* v. *City of North Little Rock,* 228 Ark. 356, 307 S. W. 2d 529, decided in 1957, one of the issues was whether the North Little Rock Boys' Club, a charitable corporation, was liable in tort. We pointed out that to hold that such liability existed, we would have to overrule the *Fordyce* and other cases, and we said: ''This we refuse to do.'' And it was further said in the *Cabbiness* case: ''The Fordyce cases were decided in 1906 and the rule of immunity of a charitable corporation from tort liability, as there recognized, has become a *rule of property* in this State. It is for the Legislature, rather than the courts, to effectuate a change, if such is desired.'' [Emphasis added.]

In a most able manner counsel for appellant urge us to overrule cases holding a charitable institution is not liable in tort, and much authority from other states has

been cited indicating that the trend is along that line. But in view of our prior holdings, and especially the strong language in the *Cabbiness* case, we do not feel like taking the liberty of doing so. It will be noticed that in the *Cabbiness* case it is stated that the rule of immunity of a charitable corporation from tort liability has become a rule of property. In *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742, Chief Justice McCulloch, speaking for the Court, said: "Decisions which become rules of property should never be overruled, whether they are right or wrong." And in *Burel* v. *Grand Lodge I.O.O.F.,* 163 Ark. 131, 259 S. W. 369, it is said: "The decision has become a rule of property, and should not be disturbed, even if the court was otherwise disposed to do so."

We next come to the proposition of whether the hospital can be liable for the injuries sustained by the little girl on the theory that t'   was a breach of contract. There was no express contract setting out the duties and the obligations of the parties. Mr. Helton delivered his little girl to the hospital for an examination. At that time he signed an authorization for the examination to be made. In this written document neither party agrees to do anything, and it cannot be called a contract in any sense of the word. In order to invoke the doctrine that it was the duty of the hospital to use due care, and liability on its part for the failure to use such care, resort must be had to operation of law. In ordinary circumstances, no charitable institution being involved, the law would imply that it was the duty of the hospital to use due care, and there could be liability for the failure to use such care. But the law does not imply something that is against public policy. How can it be said that the law implies an obligation to use due care, and liability for the failure to use such care, where the public policy of the state imposes no duty and liability in that respect? The *Cabbiness* case clearly points out that immunity of a charitable corporation from liability for negligence is so thoroughly established in this State that

the doctrine has become a rule of property. In these circumstances we cannot say that the law implies that it ·~ the duty of the hospital to use due care, and liability tⱴⱼ not doing so. It would appear that if there is any implication supplied by law it would be that there is no liability for the failure to use due care. "The law never implies an agreement against its own restrictions and prohibitions." *Los Angeles Warehouse Co.* v. *Los Angeles County,* 139 Cal. App. 368, 33 P. 2d 1058.

In *Lovich* v. *Salvation Army,* 81 Ohio App. 317, 75 N. E. 2d 459, plaintiff was injured by eating contaminated food furnished by the Salvation Army. The complaint was treated as relying on an implied warranty of fitness of the food. The court said: "We think by the greater weight of authority the action in this case is ex delicto and not ex contractu in the sense that it is based upon the violation of an obligation imposed by law . . . It would seem that whether the liability is based upon a breach of implied warranty or negligence, that the result is the same. The action for damages for personal injury and illness is tortious in nature and the rule of limited liability in favor of eleemosynary or charitable institutions must be applied."

In *Rudy* v. *Lakeside Hospital,* 115 Ohio St. 539, 155 N. E. 126, the hospital lost jewelry belonging to a patient. The patient filed suit and claimed a breach of contract. The court said: "Under the theory of nonliability of charitable instutions adopted by this court, as heretofore indicated, we are unable to make any distinction between cases involving damages to the person of a patient and damages to his property, where such are caused by the wrongful act of an employee." The court held there could be no recovery on the alleged breach of contract.

In *Greatrex* v. *Evangelical Deaconess Hospital,* 261 Mich. 327, 246 N. W. 137, 86 A. L. R. 487, a baby born in the hospital was by mistake given to the wrong person and was never returned. The father filed suit

against the hospital. The court said: "Plaintiff, in his suit against the hospital, first declared on a tort count, then on an assumpsit count, and then added the common counts. Recognizing the rule laid down by this court that a hospital, formed for non-profit purposes and supported by the benevolence of its contributors, cannot be held liable for the torts of its agents or employees, he discontinued all the counts of his declaration except the second one in assumpsit . . . Naming or labeling a count assumpsit does not make it such, when it is apparent on its face that it is one in tort. Nor is there any magic in the use of one term instead of another, when the gravamen of the act complained of is the negligence or mistake of a servant of an eleemosynary institution, exempted from liability by law under these circumstances."

In *Davin* v. *Kansas Medical, Missionary & Benevolent Ass'n.*, 103 Kan. 48, 172 Pac. 1002, a patient was injured by the failure of the nurse to stay in the room with the patient. The husband of the patient had specifically contracted with the hospital that a nurse would be kept with the patient. The court held there could be no recovery on the alleged contract and gave as one of the reasons "that public policy encourages the support and maintenance of charitable institutions and protects their funds from the law of litigation."

Of course, no one even contends that a charitable institution is not liable on its contracts such as the one involved in the above mentioned case of *Arkansas Baptist College* v. *Wilson*, 138 S. W. 2d 376, where a teacher's contract was the issue. But our conclusion is that there can be no recovery on the contract alleged here and, since the appellee is a public charity as a matter of law and is therefore not liable in tort, and is not liable on the alleged contract, the trial court did not err in dismissing both complaints. This does not mean, however, that the little girl and her parents are without any remedy. Of course, the indivual or individuals alleged to have caused the injuries by their negligence are not

immune to a suit for damages, and Ark. Stat. § 66-517 gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation.

Affirmed.

McFADDIN, J., concurs in part and dissents in part.

JOHNSON, J., dissents.

HARRIS, C. J., not participating.

ED. F. McFADDIN, Associate Justice, concurring and dissenting.

The Majority Opinion has clearly and succintly. stated the three points decided in this case; and I agree with the Majority on the first two of these points, but I dissent as to the third point.

I. The first point decided by the Majority is that the Hospital here sued is a public charity under the uncontradicted evidence in this case; and I agree with the Majority on this point. This issue cannot be determined by merely showing the statute under which the Hospital was organized, nor by showing what we held concerning this same Hospital in an earlier case. The fact question is: was the Hospital a public charity at the time of the events herein concerned? The testimony was conclusive on this issue and left nothing to submit to a jury. Thus the Crossett Health Center case (*Crossett Health Center* v. *Crosswell,* 221 Ark. 874, 256 S. W. 2d 548) affords appellants no support, because in the Crossett case there was an issue of fact as to the public charity, whereas there is not such issue here.

II. The second point decided by the Majority is that the Hospital, as a public charity is not liable in tort under the laws of this State. We are told that the trend of modern cases is against the immunity of hospitals in situations such as that presented in the case at bar; but any such trend[1] is for the Legislature and not

---

[1] For those interested, there is a splendid Annotation in 25 A.L.R. 2d 29, entitled, "Immunity of non-governmental charity from liability for damages in tort"; and the holdings of the various states are there listed and discussed.

for the Courts. As the writer of the opinion in *Cabbiness* v. *City of North Little Rock,* 228 Ark. 356, 307 S. W. 2d 529, I still adhere to the statement there contained: " . . . the rule of immunity of a charitable corporation from tort liability, as there recognized, has become a rule of property in this State. It is for the Legislature, rather than the courts, to effectuate a change, if such is desired."

III. The third point decided by the Majority is that the Hospital is not liable in contract for any of the injuries sustained by the little girl; and it is on this third point that I disagree from the Majority. The plaintiffs filed two cases: the first was in tort, and the second was in contract.[2] These two cases were consolidated in keeping with our holding in *Kapp* v. *Bob Sullivan Chev. Co.,* 232 Ark. 266, 335 S. W. 2d 819; and the Circuit Court dismissed both cases. I maintain that the plaintiffs were entitled to show their damages arising from breach of the contract. It is not now necessary to determine just how limited are the damages which might be recovered by appellants for breach of contract,[3] but I stoutly maintain that appellee did enter into a contract with appellant and did breach the contract and is liable for such breach of contract, quite independent of the tort action.

Our Arkansas cases recognize that there may be liability for breach of contract quite independent from liability for the commission of a tort. The opinion in the case of *Arkansas Baptist College* v. *Weeks* was delivered by this Court on March 25, 1940. It is not

---

[2] Black's Law Dictionary, 4th Ed., says: "In both the civil and common law, rights and causes of action are divided into two classes—those arising *ex contractu* (from a contract), and those arising *ex delicto* (from a delict or tort). See 3 Blackstone's Commentary 117."

[3] One of the legal firms in this case is Belli, Ashe and Gerry of San Francisco, and one of the members of that firm is Melvin M. Belli, who has written a Treatise on MODERN TRIALS; and Mr. Belli, in discussing medical malpractice in Volume 3, § 349, states: "In a suit on contract, the measure of damages is different than in tort. By suit on the breached promise, express or implied, there could be no recovery for pain and suffering, and the damages would be limited to the actual loss directly traceable to the breach."

reported in full in the Arkansas Reports,[4] but is reported in full in 138 S. W. 2d 376. The full text of the opinion, as copied from the files of the Arkansas Supreme Court, is attached as an appendix to this dissent. That opinion clearly recognizes the liability of a public charity in actions *ex contractu*. Actions for breach of contract may be based on either an express or an implied contract. When Mr. Helton entered his little daughter in the Hospital, as a paying patient, for the examination, he was required to sign an authorization for medical and surgical treatment for the cystogram and cystoscopy that was to be undertaken. He agreed to pay for services to be rendered, and certainly there was a contract. So, I am convinced that the Trial Court was in error in dismissing the action *ex contractu* without allowing the plaintiffs to put on their proof.

It is nothing new in Arkansas to hold that a defendant exempt from tort liability may nevertheless be liable for breach of contract under the same state of facts. *St. Paul-Mercury Indemnity Co.* v. *City of Hughes,* 231 Ark. 530, 331 S. W. 2d 106, is a case in point. It is well established in Arkansas that a municipal corporation is not liable for the torts or wrongful acts of its officers. *Trammell* v. *Town of Russellville,* 34 Ark. 105, 36 Am. Rep. 1; *Gregg* v. *Hatcher,* 94 Ark. 54, 125 S. W. 1007, 27 L. R. A. N. S. 138; *Dickerson* v. *Town of Okolona,* 98 Ark. 206, 135 S. W. 863, 36 L. R. A. N. S. 1194; *Cabbiness* v. *City of North Little Rock, supra.* A municipality is exempt from liability for torts just as a public charity is exempt from liability for torts: the rule is exactly the same. Yet, in the case of *St. Paul-Mercury Indemnity Co.* v. *City of Hughes, supra,* the city of Hughes had received a truck that belonged to St. Francis County and had damaged the truck, and we held

---

[4] Volume 200, page 1189, of the Arkansas Reports lists the result in the case, but does not contain the opinion. For several years prior to 1943, there was a policy of omitting some opinions from the Arkansas Reports, but this practice was discontinued in 1943, and, since the 205th Arkansas, all opinions of this Court are reported in full in the Arkansas Reports.

that the City of Hughes could be held liable for the damages to the truck because the complaint was framed as an action *ex contractu.* We said:

"So we hold that the appellant as subrogee of the County could sue the City for breach of bailment contract by action *ex contractu* as entirely separate from a *tort* action. Of course, the appellant has a narrow opening through which to direct its efforts at recovery because the City is not liable in *tort*, as previously pointed out. But we must conclude that the demurrer of the City should have been overruled by the Circuit Court."

Thus, we have recognized that a municipality exempt, from an action in tort may be sued for damages for breach of contract on the same state of facts. The rule likewise applies to a charitable corporation, and I stoutly dissent from the Majority Opinion which holds that there can be no recovery for breach of contract in this case. I recognize that the authorities are divided as to whether a charity, though immune from tort liability, may be liable for breach of contract upon allegation of facts which would also sustain a cause of action in tort. The holdings on both sides of this question are summarized in the Annotation in 25 A. L. R. 2d 29, at page 48; and I think the better holdings are in accord with the view that there may be liability in an action for breach of contract, even though the facts alleged may also give rise to an unmaintainable cause of action in tort. I therefore respectfully dissent from that portion of the Majority Opinion which holds that there may be no cause of action for breach of contract in this case.

## APPENDIX

Full text of the opinion of the Arkansas Supreme Court in the case of Arkansas Baptist College *et al,* Appellants, v. O. J. Wilson, Appellee, No. 4-5861, delivered on March 25, 1940:

"McHANEY, J.

"On February 1, 1939, on the verdict of a jury, a judgment was entered in the Pulaski Circuit Court against appellants in favor of appellee in the sum of $733.68, which represented the balance of salary of appellee as teacher in appellant college, including interest to that date.

"On May 1, 1939, an execution was issued on said judgment against appellants and a levy was made on certain printing presses and other printing office equipment and machinery belonging to the college. Whereupon appellants filed in said court a petition to quash said execution 'for the reason that the Arkansas Baptist College is a charitable corporation, incorporated under Chapter VII, Paragraphs 1788-1795 inclusive Crawford & Moses Digest" (2252 *et seq.* Pope's Digest), and attached to said petition a certified copy of the articles of incorporation. It was also alleged that the property levied on is the property of said college, 'a charitable corporation, organized and operated for charity, and not for profit or gain,' and that the trustees, appellants other than the college, hold its property as trustees and not for themselves. The court overruled their petition to quash and they have appealed.

"For a reversal of this judgment appellants cite and strongly rely on the holding of this court in *Fordyce* v. *Woman's Christian National Library Assn.,* 79 Ark. 550 (96 S. W. 155), where it was held that 'the property of a charity cannot be sold under execution issued on a judgment rendered for the nonfeasance, misfeasance or malfeasance of its agents or trustees.' Headnote 4. There a public charity was sued to recover damages for personal injuries, a tort action, while here the action was to recover for services rendered based on a contract of employment. The articles of association of the college specifically confer power on the trustees 'to acquire and hold property, sue and be sued, and contract in the corporate name' etc. Here it made a contract with appellee to teach school for it, a matter within the very purposes of its creation. To hold that it could thus contract

and not become liable for a breach thereof, or that its property could not be subjected to payment of a judgment for such a breach, would be to contradict the powers given it in its charter, 'to sue and be sued,' and to contract. "If this were an action to recover for the tort of the trustees, then appellants would be protected under the doctrine of the Fordyce case *supra*. But such is not the action. See *Ward* v. *Sparks,* 191 Ark. 893, 82 S. W. (2d) 5. A case directly in point, cited by appellee, is *Hall Moody Institute* v. *Compass,* 108 Tenn. 583.

"The court correctly denied the petition to quash execution, and its judgment is accordingly affirmed."