SOUTHLAND LIFE INSURANCE CO. v. JOE WILKENS GATEWOOD,

No. 7471. Decided June 26, 1940.
(141 S. W., 2d Series, 588.)

178

*Malone, Lipscomb, White & Seay,* of Dallas, for plaintiff in error.

Where a separate rider, providing for waiver of premiums in the event of total and permanent disability, expressly stipulated that the failure to pay the premium called for therein should automatically terminate such rider, and the evidence

showed there was a default in the premium, so that the policy was being carried on the extended term basis prior to the date of the accident, it was error for the court to hold that insurer was guilty of an anticipatory breach of its insurance contract, because it refused to waive future premiums. Great So. Life Ins. Co. v. Cunningham, 128 Texas, 196, 97 S. W. (2d) 692; State Life Ins. Co. v. Barnes, 58 S. W. (2d) 189; Bank Saving Life Ins. Co. v. Milan, 70 S. W. (2d) 294.

*Caldwell, Gillen, Francis & Gallagher,* of Dallas, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

Southland Life Insurance Company, plaintiff in error, assumed a policy of life insurance issued to Joe Wilkens Gatewood, defendant in error, by the American Re-Insurance Company. Attached to the policy was a rider providing, in substance, that the company would pay for the insured the premium required on the policy for every policy year following the date of approval by the company of proof that the insured had become totally and permanently disabled. The policy contained an automatic premium loan clause stipulating, in substance, that upon the failure of the insured to pay any premiums when due, the company would advance the amount of such premiums with interest thereon at the rate of six per cent per annum payable in advance as a loan against the policy, providing the loan value was sufficient to secure such advance.

The insured became totally and permanently disabled on August 2, 1933. The company denied liability on the policy on the ground that same had lapsed one day before August 2 on account of the failure of the insured to pay the premiums due on June 23, 1933, and this suit is for damage for an anticipatory breach of the policy contract. The case was tried before a jury. In answer to a special issue the jury found that the annual premium due June 23, 1933, was paid in advance by the delivery to, and the unconditional acceptance by the company of a certain promissory note executed by the insured and payable to the company on November 23, 1933. Upon such finding judgment was rendered in favor of the insured. The Court of Civil Appeals held that there was no evidence supporting such finding, and that the judgment could not be affirmed upon the ground submitted in that issue. That court, however, did affirm the judgment of the trial court, basing

its affirmance upon an alternative theory pleaded by the insured. 115 S. W. (2d) 723.

The alternative plea of the insured was that the loan value of the policy was sufficient to require the company to keep the policy in full force and effect under the automatic premium loan clause above mentioned. The insurance company alone filed an application for a writ of error. The question of whether the Court of Civil Appeals correctly held that there was no evidence to support the finding of the jury above referred to is not before us for review. The question here for review is whether, as a matter of law, the evidence supports the alternative theory adopted by the Court of Civil Appeals. Neither party claims that there was a jury issue upon that theory, and no contention is made that the Court of Civil Appeals based its judgment upon its determination of a disputed fact issue not submitted in the trial court. The question is argued here as one of arithmetic.

The company pleaded that the policy lapsed at midnight, August 1, 1933. Mr. Churchill, the company's actuary, was a witness upon the trial. He testified that, according to his calculations, the policy lapsed at the time pleaded. The Court of Civil Appeals,, without detailing the testimony upon this question in its opinion, rejected the calculations of Mr. Churchill and adopted those in the brief of the insured. In its motion for rehearing in that court the insurance company produced figures which had been compiled by two other actuaries after the trial. According to their method of computation the policy lapsed on July 31, one day earlier than the time fixed by Mr. Churchill. The argument is made here that those computations are correct, as a matter of law, and should be adopted by this Court as a basis for holding that the policy had lapsed prior to August 2, 1933, the date when the insured sustained his injuries.

■ It is disclosed by the record that for several years prior to August 2, 1933, there had been many small transactions between the Insurance Company and the insured in the form of policy loans, and loans to pay premiums with partial small payments at irregular intervals. The application for writ of error devotes many pages to the calculations made in support of the theory of the actuaries. We assume that all of the additions, subtractions, divisions and multiplications are correct, but we do not conclude that these calculations demonstrate, as a matter of law, that the policy had lapsed. For instance, without setting out here all of the multitudinous details of these calculations, we call attention to this matter: On December 29, 1930, the

insured executed to the Insurance Company his note for $332.00 as evidencing an existing policy loan, the balance of a premium note with interest thereon and cash paid to the insured at that time, with interest thereon calculated in advance. In the computations made by those actuaries this note is disregarded as any evidence of the amount owing at that time. It is figured that the amount actually owing was $332.24; that a mistake had been made by the company in calculating the amount for which the insured should have executed his note back in 1930. Although in its pleading in this case that note was set up as the indebtedness owing at that time, the company now seeks to go behind that note without any pleading justifying the reformation thereof and treat the true indebtedness as being 24 cents more than that expressed in the note. As small as that difference is, the effect thereof is to determine this case. If the indebtedness at that time is to be taken as $332.24, then the policy lapsed one day before the insured was injured. If, on the other hand, the note is to be taken as the amount of the indebtedness owing at that time, the policy was still in effect on the day of the injury. Absent any pleading or evidence of mutual mistake, we hold that the company cannot go behind this note and charge the insured this extra 24 cents.

The above is probably a sufficient statement with regard to this question, but we think it should be observed here that in making those calculations a uniform method of determining interest by the day was not employed. In some instances these actuaries treated a day as 1/360 of a year and in other instances as 1/365 of a year. Much confusion and many inaccuracies have resulted from this uncertain way of calculating. We are far from being convinced that the calculations demonstrate, as a matter of law, that this policy had lapsed prior to August 2, 1933, but, on the contrary, are convinced that same was in full force and effect on that day.

■ Another contention made here is, as we understand it, that the premium waiver rider of the policy was not in effect on August 2, 1933, because the insured defaulted in the payment of the premium due on June 23, 1933. The basis for the contention is that the premium waiver rider contained this provision: "* * * * the failure to pay any premium when due under such policy or this Disability Benefit shall automatically terminate this contract and all rights hereunder."

In support of this contention plaintiff in error cites the cases of Great Southern Life Insurance Co. v. Cunningham, 128 Texas, 196, 97 S. W. (2d) 682, and Southland Life Insurance

Co. v. Johnston, 97 S. W. (2d) 518 (error refused). The cases, in our view, do not support the contention. There is no provision in the premium waiver rider that the premium waiver will not apply if the policy is being carried under the automatic premium loan provision. This latter provision contains the following:

"At any time while this policy is thus continued in force, payment of premiums may be resumed by the policy holder without medical re-examination, and all rights of the insured under this policy will remain in full force and effect, subject only to the indebtedness hereon, the same as if premiums had been paid in cash by the insured."

The rider was a part of the policy, and the above provision is broad enough to cover the rider as well as the other parts of the policy.

The other questions presented are properly disposed of in the opinion of the Court of Civil Appeals and it would not be profitable to enter into a discussion thereof.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court June 26, 1940.