YOES *v.* CITY OF FORT SMITH.

4-7302                                   182 S. W. 2d 683

Opinion delivered October 9, 1944.

*Carl K. Creekmore* and *Partain, Agee & Partain,* for appellant.

*J. Clib Barton, Pryor & Pryor* and *G. Byron Dobbs,* for appellee.

McFADDIN, J. This case presents the question, whether municipal property has been so used as to lose its right of exemption from taxation under art. XVI, § 5, of the Arkansas Constitution.

Pursuant to Act No. 131 of the General Assembly of 1933, and amendments, the City of Fort Smith (located in Sebastian county) purchased lands in Crawford county and constructed a lake and waterworks plant for the purpose of furnishing the inhabitants of Ft. Smith an adequate supply of water. This lake is about twenty-five miles from Ft. Smith. The taxing authorities of Crawford county placed a valuation on a part of the property for tax purposes, and attempted to levy and collect a tax based on that valuation. The City of Ft. Smith obtained an injunction, enjoining appellants herein, as the officials and taxing authorities of Crawford county, from levying or attempting to collect any tax on the property so owned by the City of Fort Smith; and from that injunction there is this appeal, in which appellants make the contentions which we list and discuss.

I. *Appellants contend that the city of Ft. Smith has entered the field of a public utility, because the City is*

*supplying water to (a) the City of Alma, (b) the City of Van Buren, and (c) Camp Chaffee.*

Appellants cite art. XVI, § 5, of our Constitution, reading (as to what property is exempt from taxation), in part, as follows: "Public property used exclusively for public purposes." Appellants recognize the force of the holding of this court in *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68, to-wit: "It is generally held that a water-works system owned and operated by a municipality is public property devoted to a public use, and, as such, entitled to exemption from taxation." But appellants claim that *all* of appellee's property in Crawford county is not being used *exclusively* for public purposes; and appellants state their contention in this regard in the following language: "In order to secure its water supply, appellee constructed its dam and plant in the northern part of Crawford county, more than twenty-five miles from the city. This, we concede, it had a right to do, but only for one purpose, and that was supplying its citizens water within the corporate limits. When it went beyond this, it was no longer using the property exclusively for the public purpose for which the waterworks was designed. True, this and other courts have held that in connection with this purpose, mere surplus water may be disposed of, but it has never been held that the municipality can spread out into the general utility field and then escape liability . . ." (*i. e.,* liability of taxation on the property). Appellants thus concede, in this section of their argument, that appellee's property would be exempt from the taxation here sought to be imposed except for the contracts to furnish water to (a) Alma, (b) Van Buren, and (c) Camp Chaffee. *We proceed to examine these situations:*

(a) Alma. In the case of *McGehee* v. *Williams,* 191 Ark. 643, 87 S. W. 2d 46, this court had before it the contract whereby the City of Ft. Smith was to sell surplus water to Alma; and Chief Justice JOHNSON, speaking for this court, said: "We conclude, therefore, that the City of Ft. Smith has the power in law to sell its surplus water to inhabitants located without the city limits, and

to this end has power and authority to execute a contract.'' That case detailed the proximity of the Ft. Smith pipe line to the city of Almà, as well as other physical facts. There has been no substantial change in the situation from the time of that case to the time of the trial of the present case. In *North Little Rock Water Co.* v. *Waterworks Commission of Little Rock,* 199 Ark. 773, 136 S. W. 2d 194, we again commented on the Alma-Ft. Smith water situation.

A city may sell surplus water without losing its right to tax exemption as public property used exclusively for public use. In 3 A. L. R. 1445, there is an annotation on whether public property is taxable where income is received *incidental* to public use; and the rule is stated: ''As a general rule, it may be said that where the primary and principal use to which the property is put is public, the mere fact that income is incidentally derived from its use does not affect its character as property devoted to public use.'' The annotation is supplemented in 129 A. L. R. 485, and also in 101 A. L. R. 790, where the case of *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68, is cited to sustain the above-quoted rule.

In the case of *Anoka County* v. *City of St. Paul,* 194 Minn. 554, 261 N. W. 588, 99 A. L. R. 1137, the city of St. Paul supplied water from its municipal waterworks to the cities of West St. Paul and South St. Paul, each of which was a separate municipality. The Minnesota constitution has substantially the same language regarding tax exemption as the Arkansas constitution—*i. e.,* public property used *exclusively* for public purposes. The county of Anoka sought to collect a tax from the waterworks of the city of St. Paul, because the city was selling water to the other two, named, municipalities. Even though the Supreme Court of Minnesota held that the city of St. Paul might be carrying on a private business when it sold the water to the other municipalities (to which extent we do not go in this decision), nevertheless the Supreme Court of Minnesota said: ''It is argued that since the city was in part at least engaging in a private business, the land upon which this waterworks was located was not used

'exclusively' for a public purpose, and hence the entire waterworks should be taxed. We do not agree. The word 'exclusively,' as here used, means 'substantially all' or 'for the greater part.' The word must be given a practical construction." In that case the Supreme Court of Minnesota held that the City of St. Paul had not lost its right to tax exemption on its waterworks. We likewise conclude that the sale of water by the City of Ft. Smith to Alma did not deprive the City of Ft. Smith of its right to tax exemption on its properties in Crawford county.

(b) Van Buren. The record shows that the twenty-seven inch pipe line from the lake to Ft. Smith passes through the City of Van Buren. In 1936, the City of Ft. Smith made a contract with the Water Improvement District of Van Buren to sell surplus water to that improvement district for a period of two years. Since the expiration of the written contract, the Improvement District has continued to receive water on a month-to-month basis. In all other respects, except as mentioned, the Van Buren situation is identical with the Alma situation; and we hold that the same result follows in this case.

(c) Camp Chaffee. In preparation against, or because of, World War II, the United States Government constructed, and now maintains Camp Chaffee, a large Army Camp about fifteen miles from Ft. Smith; and the City of Ft. Smith entered into a contract with the United States of America to furnish the Government with water at the Camp. This necessarily required that pipe lines be laid to the Camp, and that various other expenditures be made—some of which may not be serviceable to Ft. Smith if the Camp is abandoned. Appellants contend that since the City of Ft. Smith is selling water to the United States and has constructed a line therefor, then the City of Ft. Smith has entered the "public utility field," and its waterworks plant is no longer exempt from taxation, because it is not used *exclusively* for public purposes. We do not agree with this contention of the appellants.

The words "public purposes" mean use by the public generally, as distinct from proprietary use. Camp Chaffee was built and is being used for a *public purpose* in the broad national sense. The City of Ft. Smith, Crawford

county, the entire State of Arkansas and the entire nation, are interested in the successful outcome of the national effort of which Camp Chaffee is a part. There, American soldiers have been, and are still being, mobilized and trained to fight for and defend our country. What greater public purpose could be stated? Providing water for Camp Chaffee in time of war is a public purpose the same as providing water for the citizens of Ft. Smith. In time of war and national emergency, as now, the welfare of the nation is always a public purpose. As was well said by the Supreme Court of Wisconsin: "The common defense of the nation can only be successfully maintained by cooperation of the states; hence, when a war is waged by the nation, those supporting it are performing service as well for their respective states as for the nation." *State* v. *Johnson*, 170 Wis. 218, 175 N. W. 594, 7 A. L. R. 1617. See, also, *State* v. *Smith*, 235 Wis. 443, 293 N. W. 161.

So: to appellants' first point—that Ft. Smith, by furnishing water to Alma, Van Buren, and Camp Chaffee has entered the public utility field, and thereby lost its right to tax exemption—we see no merit.

II. *Appellants contend that the swimming-pool, bath house, concessions and cottages below the dam are not used for public purposes within the meaning of the Constitution, and are, therefore, taxable.*

Appellants say in their brief: "After the construction of the dam, under a WPA grant a large swimming-pool and large bath house were constructed upon a tract of land which appellee had acquired wholly below the dam; admission fees were charged to swim in the pool, and other charges were made in connection with the use of the bath house, towels, etc.; cold drinks, sandwiches, and such articles, were sold at the bath house and about the swimming-pool; a coin-operated music machine was operated. It is apparent that all of these things were separate and apart from, and had no relation to, the supplying of water. In addition to these things, a number of cottages have been erected upon this land below the dam, and title thereto is in Ft. Smith." The record before us

reveals that after the dam was completed, there was a "deep hole" in the creek below the dam; and this hole was made into a swimming-pool with very little excavation; and thus the ever-present temptation to sightseers to swim in the lake was overcome by providing a swimming-pool below the lake. A bath house was built at the swimming-pool. There was the necessity of building a road across the creek *below* the dam, to be used in lieu of the road that the lake had flooded *above* the dam. All these items were put into a WPA project to secure aid from the U. S. Government. In the course of the project, and to use the required "man hours," the land below the dam was beautified. The National Youth Administration built some cottages in the area.

All the area below the dam was placed under the control of the Parks Board of the city of Ft. Smith; and has all the time been handled as a public park. The facilities are open to the public at large, and are patronized by the people of Crawford county, as well as by people from elsewhere. A small admission charge is made for use of the swimming-pool, in order to defray towel expense, etc.; cold drinks and sandwiches are sold by a concession; but from all of the admission charges and concession money, the city of Ft. Smith has never made any profit; in fact, it still lacks several hundred dollars of receiving back its original outlay for towels. If any profit should ever be received, it will go back into maintenance, etc.

We are convinced that the chancery court was entirely correct in finding that the area below the dam was in the nature of a public park, and maintained for public purposes. In *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68, Mr. Justice HART, speaking for this court, said: "Public parks are essential to the health, comfort, and pleasure of the citizens of a city. It is, therefore, generally held that public parks, maintained at the public expense, are within the terms of constitutional provisions exempting from taxation public property used for public purposes. 3 McQuillin on Municipal Corporations, §§ 1115, 1154; Dillon on Municipal Corporations, 5th Ed., §§ 976, 1096; *Owensboro* v. *Commonwealth, ex rel. Stone,* 105 Ky. 344,

49 S. W. 320, 44 L. R. A. 202; *Laird* v. *Pittsburgh,* 205 Pa. 1, 54 Atl. 324, 61 A. L. R. 332; *People, ex rel.,* v. *Chicago,* 51 Ill. 17, 2 Am. Rep. 278; and *People, ex rel.,* v. *Detroit,* 28 Mich. 228, 15 Am. Rep. 202. See, also, *Norman* v. *Kentucky Board of Managers,* 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556.''

In *Hannon* v. *Waterbury,* 106 Conn. 13, 136 Atl. 876, 57 A. L. R. 402, the Supreme Court of Errors of the State of Connecticut held that a municipality was acting in its governmental capacity in operating a swimming-pool; and the court said: ''Public parks, playgrounds, swimming-pools, and public baths or bath houses, are all examples of municipal functions undertaken for the public benefit, and, unless maintained for the corporate profit of the municipality, are within the rule of governmental immunity. *Bolster* v. *Lawrence,* 225 Mass. 387, L. R. A. 1917B, 1285, 114 N. E. 722. The charge of a small fee covering a part of the cost of the maintenance of the pool in paying a supervisor, instructors, janitors, and the like, while the municipality furnished the buildings, the swimming-pool, the apparatus and equipment in connection therewith, the coal, electricity, water, chemicals, and other necessaries for the maintenance of the pool, did not except the maintenance of the pool from the rule of governmental immunity. The city was not deriving a profit from this small fee, the charge was a mere incident of the public service rendered in the performance of a governmental duty.''

Without lengthening this opinion by the citation of other authorities, we conclude that the use of the property below the dam, as a swimming-pool, bathhouse, and public park, did not destroy the status as tax-exempt property under art. XVI, § 5, of our constitution.

Finding no error, the decree of the chancery court is in all things affirmed.