KIRKSEY *v.* CITY OF FT. SMITH.

5-1199                                    300 S. W. 2d 257

Opinion delivered April 1, 1957.

*Warner, Warner & Ragon,* for appellant.

*Lem C. Bryan,* City Atty. and *Hardin, Barton, Hardin & Garner,* Special Counsel, for appellee.

*Mehaffy, Smith & Williams* and *Glenn G. Zimmerman, amici curiae.*

MINOR W. MILLWEE, Associate Justice. The issue here is whether a municipal corporation is liable for a tort committed in connection with the operation and maintenance of its airport. Essential to such determination is the further question whether the operation and maintenance of a municipal airport is a governmental or proprietary function.

Plaintiff is the widow of Jason Kirksey, deceased, and administratrix of his estate. She brought this action against the defendant, City of Fort Smith, Arkansas, seeking damages for the injury and death of her husband arising out of his employment at the Fort Smith Municipal Airport. The complaint alleges that the airport was acquired under the right of eminent domain with all revenues derived therefrom being used for operation expenses, maintenance, retirement of bonds and improvements of such airport. There are repeated allegations in the form of conclusions of law or fact to the effect that the City operated its airport as "a proprietary function" or a "private corporation" and not for a governmental purpose; and that it sold petroleum products to the general public and operated at a net profit with income derived from such sources as office and other space rentals, cafe operation and other activities of an alleged proprietary nature. However the salient factual allegations are that the deceased sustained injuries from an explosion causing his death on account of the negligence of the defendant, and its agents, in ordering him to use certain solvents and in failing to use reasonable care to furnish him with safe tools and place to work.

The City demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. After the matter was taken under advisement and fully briefed the able trial judge rendered a comprehensive and well considered opinion in which he concluded that the operation and maintenance of the municipal airport by the City constituted a governmental and not a proprietary function for which it was not liable to respond in damages to the plaintiff; and that the demurrer should, therefore, be sustained. This

appeal is from a judgment dismissing the cause of action after plaintiff declined to plead further.

In reaching the conclusion that the operation and maintenance of the Fort Smith Municipal Airport is a governmental function the trial court reviewed our various statutes dealing with the construction and operation of such installations and the cases from other jurisdictions bearing on the question relied on by each party. After noting the sharp division of authority on the question in other jurisdictions the court concluded that our own cases pointed to non-liability on the part of the City. We quote from the opinion:

"Act 128 of 1953 was passed and referred to by short title as 'Municipal Airports Act,' which appears in Supplement, Ark. Stats. as sections 74-601 to 74-620, inclusive. Section 74-602 provided for the general powers of municipalities in the operation and maintenance of airports and as a part thereof, provided: '. . . including the construction, installation, equipment, maintenance and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accommodation of air travelers, and the purchase and sale of supplies, goods and commodities as an incident to the operation of its airport properties . . .'

"Defendant, City of Fort Smith, contends that under Section 74-615, Supplement, (Act 128 of 1953) the operation and maintenance of a municipal airport was determined and declared by the Legislature to be a governmental function. The section provides in part: 'the . . . construction, i m p r o v e m e n t, maintenance . . . operation . . . and the exercise of any other powers herein granted to such municipalities . . . are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity; *and in the case of any municipality are declared to be municipal functions and purposes as well as public and governmental* . . .'

"Section 74-616 exempts the income from operation of airports by a municipality from taxation. Sec-

tion 74-619 as to interpretation and construction of the Act, provides that: 'This Act (74-601—74-620) shall be so interpreted and construed as to make uniform so far as possible the laws and regulations of this State and other States and of the government of the United States having to do with the subject of municipal airports.' Under the provisions of Act 128 of 1953, Federal aid was made available by grant or loan for construction of airports by municipalities.

"Section 74-615 very clearly provides that the exercise of the powers granted, which include maintenance and operation of airports, constitute public and governmental functions for a public purpose and to be matters of public necessity and that in cases of municipalities are declared to be municipal functions and purposes as well as public and governmental.

"Act 128 of 1953 makes no reference to tort liability, nor does it in direct terms, exempt municipalities from tort liability, other than declaring that in the exercise of the powers granted under the Act, same constitute governmental functions . . .

"The case of *Little Rock* v. *Holland,* 184 Ark. 381, 42 S. W. 2d 383, declared the law to be that: A municipality acting in its proprietary or corporate capacity is liable for injury caused by the negligence or nonfeasance of its officers or agents; but, when acting in its governmental capacity, it is not liable for such negligence or nonfeasance. Factually, the appellee was an electric lineman, employed by the city, was sent out alone to remove a pole from the city's line. He climbed the pole, which broke and he fell sustaining injuries. He alleged negligence upon the part of his superior by reason of failure to inspect pole or to warn him of its dangerous condition, and in failing to furnish him with a safe place to work. A demurrer was filed to the complaint, which was overruled. The appellate court on appeal, reversed the case and ordered its dismissal, holding that the operation of a municipal power plant was a governmental function. It cited with approval the case of *Granger* v. *Pulaski County,* 26 Ark. 37, in which the

court held that counties are *quasi*-corporations and that they possessed no power and incur no obligations except·conferred or imposed by statute, by the party injured, for the negligence of their officers, unless authorized by statute. The court also stating that any distinction between liability of counties and cities had been lost sight of by the court in later decisions. The court stated that the maintenance and operation of waterworks, sewers, buildings and repair of streets were necessary governmental functions, and 'it is difficult to perceive why the same rule should not apply to the facts in this case. We hold that it does . . .'

"In the case of *Patterson* v. *City of Little Rock,* 202 Ark. 189, 149 S. W. 2d 562, plaintiff, a minor child, sustained injuries through the alleged negligence of the employees of the Municipal Waterworks in leaving open and uncovered a water meter box. She sued the City of Little Rock, the Little Rock Municipal Water Works and its Commissioners for damages. A demurrer to the complaint was sustained.

"The demurrer was sustained and affirmed on appeal to the Supreme Court. The court discussed Section 1 of Act 131 of 1933 which authorized any city to purchase or construct a waterworks system, holding that the Act conferred on municipalities the power to purchase or construct a waterworks system but did not require them to do so. If the power was exercised as conferred, then the operation of the same was to be performed as set out therein. They held that the city was therefore, engaged in a governmental function in the operation of the water works by its board of commissioners and could not be sued. The court, reiterated its former holdings, that the city in the operation of waterworks, electric light plants, sewer systems, etc., was engaged in a governmental function and that an action for damages based upon the negligence of its officers and agents could be maintained, citing cases.

"It should be observed that the declarations of law and the holding as announced in the case of *Holland* v. *City of Little Rock,* and *Patterson* v. *City of Little Rock,*

were made prior to the enactment of Act 128 of 1953. There is nothing in the context of Act 128 of 1953, as the court interprets the Act, which in any respect warrants or justifies a change, modification or reversal of the law as declared in the cases of *Patterson and Holland* v. *City of Little Rock, supra.* In the annotations p. 128, cited in 138 A. L. R., the California Court in the case of *Coleman* v. *Oakland,* 110 Cal. App. 715, 295 P. 59, held that a municipally operated airport 'falls naturally into the same classification as such public utilities as electric light, gas, water and transportation systems, which are universally classed as proprietary.' But the Supreme Court of Arkansas in its decisions holds directly to the contrary; that a city in the operation of waterworks, electric light plants, sewer systems, etc. was engaged in governmental functions, and not liable in damages for negligence of its officers.

"Our own Supreme Court has repeatedly held that a right of action against municipal corporations does not exist at common law and that their liability to a private action for torts, must be determined by the statute which creates them."

In urging a reversal plaintiff relies particularly on the case of *Rhodes* v. *City of Ashville,* 230 N. C. 134, 52 S. E. 2d 371, and several cases from other jurisdictions which have followed it, including *Granite Oil Securities, Inc.* v. *Douglas Co.,* 67 Nev. 388, 219 P. 2d 191; *Ex Parte Houston,* 93 Okla. Cr. 26, 224 P 2d 281; *Harrison Co.* v. *West Virginia Air Service,* 132 W. Va. 1, 54 S. E. 2d 1; *Miami Beach Airline Service, Inc.* v. *Crandon,* (Fla.) 32 So. 2d 153, 172 A. L. R. 1425. The North Carolina court held that the operation and maintenance of a municipal airport under a statute with a provision identical to Ark. Stats., Sec. 74-615, *supra,* to be a proprietary function and that the statutory declaration to the contrary demonstrated a legislative intent to declare such activities to be a governmental function only in the sense that "it was a public purpose." On rehearing in 53 S. E. 2d 313, the court concluded that the Legislature "unquestionably" intended to declare

the operation of the airport to be in furtherance of a governmental function, but that its "declaration to that effect did not make it so, for that is a judicial and not a legislative question."

In support of the judgment the City relies on *Stocker* v. *City of Nashville,* 174 Tenn. 483, 126 S. W. 2d 339, 124 A. L. R. 345; *Abbott* v. *City of Des Moines,* 230 Iowa 494, 298 N. W. 649, 138 A. L. R. 120; and *Imperial Production Corp.* v. *City of Sweetwater,* 210 Fed. 2d 917, which hold the operation and maintenance of municipal airports to be a governmental function under statutes containing provisions similar but not identical to Sec. 74-615. In addition the defendant relies on many of our own cases which hold a municipality or *quasi* public corporation to be engaged in a governmental function in the operation of such facilities as water works, electric light plants and sewer systems. The City also cites *Handley* v. *City of Hope,* 137 Fed. Supp. 442, where the court held municipality immune from a tort action arising out of the operation of a swimming pool and rested its decision on *Yoes* v. *City of Ft. Smith,* 207 Ark. 694, 182 S. W. 2d 683. In the *Yoes* case we held the city's operation of a water works which sold water to other cities and an army camp, and its operation of a swimming pool, cottages and concessions were all exclusively for a public and not a proprietary purpose, so as to be exempt from taxation. See also *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68.

There is a notable lack of harmony among the various jurisdictions in the application of the governmental-proprietary distinction to specific municipal activities and functions. One legal scholar has observed that the divergent rules adopted by American courts "make a curious patchwork of immunity and responsibility."[1] Plaintiff correctly states that the weight of authority supports the proposition that the operation of a municipal airport is a proprietary function. However, as the trial court indicated, the same jurisdictions which so hold have also found the operation of water works,

---

[1] Professor Fleming Jones James Jr. in 22 U. of Chicago Law Rev. 610.

light plants and swimming pools by a municipality to be a proprietary function, while our cases are to the contrary.

The maintenance and operation of a municipal airport is in the interest of the public generally and we think it was within the province of the Legislature to determine that it constituted a governmental function. The North Carolina Court's holding that this involves a judicial and not a legislative question appears somewhat at variance with our own cases and the rule generally held applicable. The question whether a municipal function is governmental or proprietary is ordinarily determined in accordance with the public policy in the jurisdiction in which it arises. 63 C. J. S., Municipal Corporations, Sec. 747. It is also generally recognized that the public policy of a state is to be found in its Constitution and statutes. See 11 Am. Jur., Constitutional Law, Sec. 139, where the author states: "In order to ascertain the public policy of a state with respect to any matter, the acts of the legislative department should be looked to, because a legislative act, if constitutional, declares in terms the policy of the state and is final so far as the courts are concerned." Our own cases are in harmony with this statement. *Ft. Smith* v. *Scruggs,* 70 Ark. 549, 69 S. W. 679, 58 L. R. A. 921; *Ward* v. *Bailey, Governor,* 198 Ark. 27, 127 S. W. 2d 272. Statutes exempting municipalities from tort liability are generally held to be within the power of the legislature and are not unconstitutional. See cases cited in 124 A. L. R. 350, including *Mack* v. *Charlotte City Waterworks,* 181 N. C. 383, 107 S. E. 244.

If we were privileged to set the state's public policy on this issue we might readily agree that the present pattern of partial tort liability of municipalities should be replaced with a stricter or more complete rule of responsibility. Considerations of fair play and justice suggest that those injured by the negligence of a municipality or its agents should be compensated on equal terms with those injured by individuals or private corporations. Able law writers have so recommended, but through legislative and not judicial action. See the

splendid article on "Municipal Tort Liability in Operation," 54 Harvard Law Review 437. A step in this direction was taken by the Arkansas Legislature in 1947 by the enactment of Ark. Stats., Sec. 66-517, *et seq.*, which authorizes municipalities and other agencies immune from tort action to purchase liability insurance with the right of direct action by the injured plaintiff against the insurer. Perhaps the Legislature will make the purchase of such insurance mandatory at some future time. This decision rests with the people acting directly or through their legislature, and not with the courts.

The judgment is affirmed.

McFADDIN, J., concurs.