5-1392                                    307 S. W. 2d 529

Opinion delivered December 9, 1957.

*Osborne W. Garvin,* for appellant.

*Reed W. Thompson, C. Byron Smith, Jr.,* and *Dean R. Morley,* for appellee.

ED. F. McFADDIN, Associate Justice.    The appellant filed this action against the City of North Little Rock (hereinafter called "City") and the North Little Rock Boys' Club (hereinafter called "Boys' Club"),

seeking to recover damages for injuries sustained by Floyd Cabbiness[1] in the swimming pool owned by the City and operated by the Boys' Club. When the Trial Court sustained the defendants' demurrers to the complaint, the plaintiff elected to stand on the complaint and final judgment of dismissal was entered. This appeal ensued. The question presented is whether, under the alleged facts, either of the defendants is liable for the injuries sustained by Floyd Cabbiness in the said swimming pool.

The complaint and exhibits contain the following allegations: (a) that at all times involved, the City was a city of the first class; and the Boys' Club was a benevolent corporation; (b) that in 1938 the City constructed on its property a building in which was a swimming pool, with diving boards, dressing rooms, etc.; (c) that by written instrument in 1938 the City leased[2] the said building, swimming pool, dressing rooms, etc. to the Boys' Club; and the relationship between the City and the Boys' Club was and is that of Lessor and Lessee; (d) that ever since 1938 the Boys' Club, with knowledge of the City, has opened the swimming pool to the general public on general admission charges; (e) that on June 21, 1954, Floyd Cabbiness, a member of the general public and not a member of the Boys' Club, paid 25c admission for the privilege of swimming in the pool and became a paid patron; and (f) that Floyd Cabbiness received serious and permanent injuries when, in diving, his head struck the bottom of the swimming pool[3].

---

[1] The plaintiff was Floyd Cabbiness, a minor, by his mother and next friend. The complaint alleged the seriousness and the permanent nature of the injuries sustained by Floyd Cabbiness, and prayed judgment against the defendants for $426,400.00.

[2] A copy of the lease was made a part of the complaint.

[3] The complaint alleged that Floyd Cabbiness "dived into the pool from the highest diving board so constructed by the city and maintained by the club for that purpose; his first dive was a 'swan dive' which is a shallow dive; he returned to the same diving board and made a 'jack knife' dive which is a deep dive, and while so doing, struck his head on the concrete bottom of the pool causing injuries. At the time plaintiff entered the pool there were many other swimmers and bathers in the pool and the water was so turbulent and agitated that the depth of the pool was not discernible."

As the basis of liability of the defendants the complaint contained the following paragraph:

"The defendant City leased the pool and diving board to the Defendant Club when it knew, or in the exercise of ordinary care should have known, that the constructing of such a high diving spring-board over such a shallow pool of water was imminently and inherently dangerous, and made the use of said diving board unsafe and dangerous to the people lawfully using the same, wrongfully exposed such users to injury, and the same was at all times a nuisance; that there were no markers in, on, or around the pool showing the shallowness of the water; there were no notices or warnings restricting the use of the diving board, and no warning or notice was posted to indicate the shallowness of the water beneath the diving board; that the Defendant City constructed the swimming pool and diving board, had actual notice and knowledge of the use of the premises by the Defendant Club; it had knowledge of the imminently and inherently dangerous condition then existing at the time of the execution of the lease agreement, the conditions then existing constituting a nuisance, and the Defendant City did nothing thereafter to remove or correct the nuisance it had constructed, and by its lease authorized the Defendant Club to maintain; the Defendant City knew, or in the exercise of ordinary care should have known, that the high diving spring-board over the shallow water was imminently and inherently dangerous, and that the lawful use of same by patrons wrongfully exposed such patrons to injury, and the same was at all times a nuisance. That the injuries to the plaintiff were proximately caused by the creation and maintenance of said nuisance by the Defendant City as Lessor and the Defendant Club as Lessee."

As heretofore mentioned, the lease between the City and the Boys' Club was made a part of the complaint. Germane portions of the lease are: that the City leased the premises to the Boys' Club, agreed to furnish free all necessary electric current, and agreed to maintain fire, hail, and tornado insurance on the building; and that the Boys' Club agreed to use said building and

premises "for legitimate and proper boys' club purposes, it being understood and agreed that the said Boys' Club shall during the term hereof, have the right to make and collect charges for use of the swimming pool, PROVIDED that any and all sums derived from said charges shall be used for boys' club purposes." The lease demonstrates that the City received nothing from the use of the property, and that the City was merely attempting to make the property available to the general public.

I. *The Allegations As To Nuisance.* We have heretofore copied the germane portions of the complaint as to liability. Appellant lays great stress on the allegations in the complaint to the effect that the City had constructed and leased to the Boys' Club a *nuisance,* and that the Boys' Club had maintained such *nuisance.* Appellant claims that *maintaining a nuisance* is entirely different from an *act of negligence.* Of course, there is a distinction between nuisance and negligence. See 65 C. J. S. 316; 66 C. J. S. 736; and 66 C. J. S. 751. But when we view the situation realistically in the case at bar, there are really questions of (a) whether the City was negligent in constructing the pool, and (b) whether the Boys' Club was negligent in failing to provide warnings as to the depth of the pool. Absent, as here, any eminent domain question of damage to property by the construction of a nuisance, the proper procedure for an aggrieved person is to sue to abate the nuisance, rather than to sue the municipality in tort. In *Jones* v. *Sewer Dist. No. 3 of Rogers,* 119 Ark. 166, 177 S. W. 888, we said: "As we have already seen, this Court has uniformly held that neither municipal corporations nor local improvement districts, nor their officers, may be sued at law for tort; but it does not follow that in a proper case they may not be enjoined from creating a nuisance or be required to abate one already created by them[4]."

---

[4] In 38 Am. Jur. "Municipal Corporations" 647, it is recognized that some jurisdictions apply the rule of governmental immunity in cases wherein the nuisance was created in connection with the performance of a governmental function. Cases on this point are collected in an annotation in 75 A.L.R. 1196 entitled, "Rule of municipal

In *Holt* v. *Texarkana*, 168 Ark. 847, 271 S. W. 690, there was an effort to hold the City of Texarkana liable for failure to keep a viaduct in repair. The Court made reference to our general municipal corporation statute, which is now § 19-3801 Ark. Stats.: "The City Council shall have the care, supervision and control of all the public highways, bridges, streets, alleys, public squares and commons, within the City; and shall cause the same to be kept open and in repair *and free from nuisance.*" (Italics our own.) This Court held that under such statute, the City of Texarkana was not liable in tort for failure to keep the viaduct in repair. It is also well to note that in the same case, the Court cited the case of *Fordyce* v. *Women's Christian National Library Assn.*, 79 Ark. 550, 96 S. W. 155, which was a case involving a benevolent corporation such as the Boys' Club in the case at bar.

So we conclude that the basic question in the case at bar is whether either the City, as a municipal corporation, or the Boys' Club, as a charitable corporation, is exempt from tort liability; and on that basis we proceed to further consideration.

II. *The Case Against The City.* Both sides argue the case at bar as though § 19-3601 *et seq.* Ark. Stats. contained the applicable law. The said sections are from Act No. 291 of 1941 and amendatory acts, and the lease contract here involved was executed in 1938; but the enactment of the 1941 and subsequent legislation constitutes sovereign recognition of the right of municipal corporations to have parks and swimming pools.

Really, the basic question is whether the City, in constructing and maintaining the swimming pool, was acting in a *governmental* capacity or in a *proprietary* capacity. We have a number of cases in Arkansas on the distinction between governmental capacity and the proprietary capacity of municipalities. Some of these cases are: *Town of Searcy* v. *Yarnell*, 47 Ark. 269, 1

---

immunity from liability for acts in performance of governmental functions as applicable in case of personal injury or death as result of a nuisance."

S. W. 319; *Fussell-Graham-Alderson Co.* v. *Forrest City,* 145 Ark. 375, 224 S. W. 745; *City of Little Rock* v. *Holland,* 184 Ark. 381, 42 S. W. 2d 383; *Yoes* v. *City of Fort Smith,* 207 Ark. 694, 182 S. W. 2d 683; *Ark. Valley Compress & Warehouse Co.* v. *Morgan,* 217 Ark. 161, 229 S. W. 2d 133; and *Kirksey* v. *City of Fort Smith,* 227 Ark. 630, 300 S. W. 2d 257.

The general rule in Arkansas is that when a City is acting in its governmental capacity, there is no liability in such a case as this one. According to the complaint and the exhibits in this case, the City of North Little Rock has never received any revenue from the building, the swimming pool, diving board, etc. The City has owned the property, furnished the electric current, kept up the fire, hail, and tornado insurance; has allowed the Boys' Club to receive all admission money charged, and has required the Boys' Club to keep the property in a state of good preservation and repair. When the City received no revenue for its property and is letting it be used by the general public—and that is what the complaint in this case shows—then the City, in having a swimming pool, is acting in a governmental capacity.

In the case of *Yoes* v. *City of Ft. Smith,* 207 Ark. 694, 182 S. W. 2d 683, we discussed whether the City was acting in a proprietary or a governmental capacity in operating a swimming pool; and we said:

"In *Hannon* v. *Waterbury,* 106 Conn. 13, 136 Atl. 876, 57 A. L. R. 402, the Supreme Court of Errors of the State of Connecticut held that a municipality was acting in its governmental capacity in operating a swimming pool; and the court said: 'Public parks, playgrounds, swimming pools, and public baths or bath houses, are all examples of municipal functions undertaken for the public benefit, and unless maintained for the corporate profit of the municipality, are within the rule of governmental immunity. *Bolster* v. *Lawrence,* 225 Mass. 387, L. R. A. 1917B, 1285, 114 N. E. 722. The charge of a small fee covering a part of the cost of the maintenance of the pool in paying a supervisor, instruc-

tors, janitors, and the like, while the municipality furnished the buildings, the swimming pool, the apparatus and equipment in connection therewith, the coal, electricity, water, chemicals, and other necessaries for the maintenance of the pool, did not except the maintenance of the pool from the rule of governmental immunity. The city was not deriving a profit from this small fee, the charge was a mere incident of the public service rendered in the performance of a governmental duty.' ''

In the more recent case of *Kirksey* v. *City of Fort Smith,* 227 Ark. 630, 300 S. W. 2d 257, we had before us a case as to the liability of the City for the operation and maintenance of the municipal airport; and held that the City was immune from tort liability because it was acting in a governmental capacity and not in a proprietary capacity[5].

There is no claim here that the City or the Boys' Club had any insurance, under Act No. 46 of 1947; so our holding in *Aetna Casualty & Surety Co.* v. *Brashears,* 226 Ark. 1017, 297 S. W. 2d 662, has no application. Clearly the City of North Little Rock was acting in a governmental capacity in this case; and, as such, is not liable for the unfortunate injuries sustained by Floyd Cabbiness. Therefore, the Trial Court correctly sustained the demurrer of the City.

III. *The Case Against The Boys' Club.* We come next to the question of whether the Trial Court was correct in sustaining the demurrer of the Boys' Club; and that involves the immunity of a charitable corporation from tort liability. The complaint, together with the exhibit, alleges that the North Little Rock Boys' Club was

---

[5] The U. S. District Court for the Western District of Arkansas, in the case of *Handley* v. *City of Hope,* 137 Fed. Supp. 442, had before it the question of the liability of a city for the drowning of a child in a municipal swimming pool. In a well considered opinion the Court quoted at length from *Yoes* v. *City of Fort Smith, supra,* and held that the city. was not liable. There is also an annotation in 51 A.L.R. 370 entitled, "Liability of municipality in respect of municipal bath houses, bathing beaches, and swimming pools". A continuation of the same annotation is found in 57 A.L.R. 406.. Also in 29 A.L.R. 863 there is an annotation on "Liability of municipal corporations for injuries due to conditions in parks".

and is a benevolent corporation, organized and existing under the laws of the State of Arkansas.

In the oral argument, learned counsel for appellant conceded with becoming candor that the Boys' Club was without surplus funds; that our holding in *Crossett Health Center* v. *Croswell*, 221 Ark. 874, 256 S. W. 2d 548, afforded appellant no relief; and that in order to hold the Boys' Club liable in this case it would be necessary to over-rule our holdings regarding the immunity of charitable corporations from tort liability[6], as reflected by the cases of *Women's Christian National Library Assn.* v. *Fordyce,* 79 Ark. 532, 86 S. W. 417; and *Fordyce* v. *Women's Christian National Library Assn.,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A. N. S. 485, and the many other cases citing and following the Fordyce cases. This we refuse to do.

The Fordyce cases were decided in 1906 and the rule of immunity of a charitable corporation from tort liability, as there recognized, has become a rule of property in this State. It is for the Legislature, rather than the courts, to effectuate a change, if such is desired. No such legislation has been enacted applying to a corporation such as the Boys' Club here[7]. We, therefore, affirm the action of the Trial Court in sustaining the demurrer of the Boys' Club.

Affirmed.

---

[6] On the immunity of charitable corporations from tort liability, we call attention to a few articles. See 6 Ark. Law Review 209; 14 A.L.R. 572; and 25 A.L.R. 2d 29.

[7] In 1940 in the case of *Ark. Valley Co-op. Rural Elec. Co.* v. *Elkins,* 200 Ark. 883, 141 S. W. 2d 538, immunity was extended to a rural electric co-operative corporation; and the Legislature thereafter passed the Act that is now § 64-1525 Ark. Stats. By Act No. 46 of 1947, the Legislature allowed certain corporations to purchase insurance policies for the benefit of the public. See *Aetna Ins. Co.* v. *Brashears,* 226 Ark. 1017, 297 S. W. 2d 662.