MUSKINGUM WATERSHED CONSERVANCY DISTRICT, APPELLANT,
*v.* WALTON, AUDITOR OF CARROLL COUNTY, APPELLEE.

(No. 69-278—Decided March 25, 1970.)

*Messrs. Smith, Renner, Hanhart, Miller & Kyler* and
*Mr. Wilfred R. Miller,* for appellant.
*Mr. Rudolph E. Battista,* for appellee.

SCHNEIDER, J. Appellant is a political subdivision of
the state by virtue of R. C. 6101.01, *et seq.*

The subject matter of the application for tax exemp-
tion before the Board of Tax Appeals was a tract of land
of approximately 76 acres which the appellant acquired
in 1953. No application for exemption of the parcel from
the Carroll County tax list was filed until the instant one,
which relates solely to the tax year 1968 which coincides
with the calendar year.

The governing statute in this case is R. C. 5709.08,
which, so far as is relevant to the issue, provides that

"public property used exclusively for a public purpose, shall be exempt from taxation."

The parties do not dispute that the tract, title to which is held by a public agency (appellant) created by, and subject entirely to the ultimate control of, the General Assembly through revision or repeal of its governing statutes from time to time, is public property. See *Dayton Metropolitan Housing Authority* v. *Evatt*, 143 Ohio St. 10, 16. Moreover, there is no dispute that, from the time of its acquisition and continuing throughout 1968, the land in question had been open in its entirety to the public, without charge and virtually without regulation, for hunting, hiking, or any other recreational activity desired by the user not requiring improvements of or on the land. Presumably, this use included the study of nature and the contemplation of its beauty.

The Board of Tax Appeals inferred that the syllabus and a portion of the opinion in *Carney* v. *Cleveland City School Dist. Public Library*, 169 Ohio St. 65, compelled the denial of tax exemption since appellant's rather extensive operations elsewhere are funded not from tax revenues but substantially from the proceeds of leases of part of its lands to private and public agencies which operate commercial enterprises thereon. Thus, the board apparently concluded that nontax funds were used to acquire the tract and thus so tainted it with commerciality that its taxation was forever inescapable.

This conclusion is untenable. It would, for example, compel the taxation of all property of every non-governmental charitable institution, regardless of its use, merely because the funds used to acquire and maintain the property were derived from nontax sources. In other words, the buildings of a college which are used for college purposes would become taxable, contrary to *Denison University* v. *Board of Tax Appeals*, 2 Ohio St. 2d 17, if those buildings were acquired and maintained from receipts from admittedly taxable commercial property owned by the college.

Clearly, the intent and holding of *Carney,* and of every other decision of this court on the subject, before and since *Carney,* is otherwise. Moreover, the board ignored the fact that the leased lands of the appellant are not the subject of this controversy over tax exemption. Presumably, they are on the tax list. See *Cleveland* v. *Perk,* 2 Ohio St. 2d 173; *Division of Conservation and Natural Resources* v. *Board of Tax Appeals,* 149 Ohio St. 33; and *Cleveland* v. *Board of Tax Appeals,* 153 Ohio St. 97.

Although this court has had only one occasion to allude to the proposition (*McNab* v. *Board of Park Commrs.,* 108 Ohio St. 497, 503), and no other occasion to announce it, this case is an appropriate vehicle to say that the force of our Constitution and our statutes, as well as all of our prior decisions relating to various aspects of tax exemption, is that land which is available to the public generally on the basis of equality and to the extent of its capacity, without charge, as here, for open-air recreational and educational purposes is "used exclusively for a public purpose" within the meaning of tax-exemption statutes which contain that condition for their operative effect.

Public parks are as essential to the health, comfort and pleasure of the citizenry as a public utility water supply (*Columbus* v. *Delaware,* 164 Ohio St. 605); a natural gas supply (*State, ex rel.,* v. *Toledo,* 48 Ohio St. 112); a mass transportation system (*Cleveland* v. *Board of Tax Appeals,* 167 Ohio St. 263); or a public auditorium (*Cleveland* v. *Carney,* 172 Ohio St. 189). See, also, *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68; *Yoes* v. *Fort Smith,* 207 Ark. 694, 182 S. W. 2d 683; *Owensboro* v. *Commonwealth,* 105 Ky. 344, 49 S. W. 320; *State* v. *Columbia,* 115 S. C. 108, 104 S. E. 337; *People, ex rel. Lawless,* v. *Quincy,* 395 Ill. 190, 69 N. E. 2d 892.

The second reason advanced by the board for denying exemption was that in the tax year in question appellant began construction of a par-3 golf course, a golf-driving range, a "club house" containing a refreshment stand and a ski-slope on several acres of the tract which are located

within close proximity to Atwood Lake Lodge, a resort facility owned by the appellant but leased to a private corporation and admittedly on the tax list. None of these improvements were completed or in use during 1968. It is not clear what state of completion was reached by the end of that year. However, there is nothing in the record to indicate that the construction of these improvements materially interfered with or detracted from the public's enjoyment or use of the entire tract in 1968 as a recreational area. Thus, the order of the board as to the entire tract clearly appears to be both unlawful and unreasonable.

A vagueness pervades the record as to the details of the prospective operation of the developed recreational facilities when fully completed and opened for use. The testimonial evidence was supplied solely by appellant's "manager of the land department." He admits that a nominal charge for the use of the new facilities is contemplated. Apparently, the exact charges had not been fixed, even at the time of the hearing below. No action or policy of the board of directors of appellant with reference thereto appears. In any event, noncompetitive, regulatory charges, or such charges as are necessary to defray the cost of operation, would not be destructive of tax exemption, particularly where, as here, no part of the revenues will inure to the personal profit of any person. See *Bowers* v. *Akron City Hospital,* 16 Ohio St. 2d 94, 96, and cases cited therein; and *Cleveland* v. *Carney, supra* (172 Ohio St. 189).

There is a suggestion by the appellee, but no evidence, that the facilities are being provided primarily for the benefit of adjacent Atwood Lodge, the profits from which indirectly inure to the benefit of appellant via the conduit of its lease. In addition, there is evidence that another privately-owned golf course and another privately-owned ski-slope are located within competing range of appellant's future facility. But no evidence was adduced that actual competition will ensue to the detriment of the privately-owned facilities or that private enterprise could and would have satisfied the apparent demand for additional developed re-

244

creational facilities of the kind contemplated here, but for the activities of appellant.

These considerations may be relevant in determining whether the use of the improvements and the land upon which they are situated will be "*exclusively* for a public purpose." They were not relevant in *Atwell* v. *Board of Park Commrs.*, 2 Ohio St. 2d 257, for the reason that the property involved in that case belonged to a *park district* created by R. C. 1545.01, which is the sole criterion for tax exemption under R. C. 5709.10.

The decision of the board is reversed and final judgment is entered granting the tax exemption requested.

*Decision reversed.*

TAFT, C. J., O'NEILL, DUNCAN and CORRIGAN, JJ., concur.

HERBERT, J., concurs in the syllabus.

MATTHIAS, J., not participating.