Milos J. JIRICKO, M.D., et al., Plaintiffs,

v.

COFFEYVILLE MEMORIAL HOSPITAL MEDICAL CENTER, et al., Defendants.

No. 84–1775–K.

United States District Court, D. Kansas.

Oct. 10, 1985.

Payne H. Ratner, Jr., Wichita, Kan., P. Terence Crebs and Richard J. Pautler, St. Louis, Mo., for plaintiffs.

Alan L. Rupe, Wichita, Kan., Paul P. Hasty, Jr., Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This action was brought by plaintiffs Milos J. Jiricko, M.D. (Jiricko), and Montgomery County Anesthesia Associates, P.A. (MCAA), a Kansas professional association owned by Jiricko, against defendants, the City of Coffeyville, Kansas; Coffeyville Memorial Hospital Medical Center; Bart Solenthaler, Eugene Brown, Homer Denny, Martha Powell, William T. Read, Ed O'Rear, Henry J. Honas, individually as the hospital's board of trustees; Paul Sandhu, M.D.; Coffeyville Doctors' Clinic, P.A.; Kenneth S. Parker, D.O.; B.E. Howerter, M.D.; Phillip E. Middleton, M.D.; Chan Han, M.D.; Eugene Gibbs, M.D.; and K.D. Shirsat, M.D. It appears to the Court at this time that Jiricko essentially seeks to recover damages that stem from his demotion as head of the hospital's anesthesiology department, the manner in which he was demoted, and lost business due to the demotion. In Jiricko's and MCAA's eight count complaint, they allege violations of the Sherman Act, the Clayton Act, restraint of trade, violation of the Kansas Antitrust Act, violation of due process, breach of contract, violation of 42 U.S.C. § 1983, tortious interference with business relationships and expectancies, intentional infliction of emotional distress, and slander. This matter is before the Court on a motion to dismiss filed by defendants Howerter, Middleton, Solenthaler, Brown, Denny, Powell, Read, O'Rear, Honas, Sandhu, and Coffeyville Doctors' Clinic, on the grounds of (1) the state and federal antitrust claims are barred by the applicable statute of limitations; (2) the claims are not stated with sufficient definiteness and certainty; (3) the prayer does not include a specific demand for monetary relief; and (4) the Court lacks subject matter jurisdiction. Defendant Coffeyville Memorial Hospital Medical Center has also moved to dismiss on the grounds that it is exempt from the nation's antitrust laws. Dr. Parker moves for dismissal on the grounds the Noerr-Pennington doctrine protects him from liability. For the reasons stated below, all of defendants' motions to dismiss must be denied.

The following facts give rise to this suit. Jiricko, an anesthesiologist, began working at Coffeyville's only hospital in July 1979. Jiricko claims that after he refused to increase Glen Stephens' salary pursuant to request of defendant Sandhu in the fall of 1979, his contract with the hospital was terminated effective December 31, 1980. Jiricko claims Sandhu had warned him in 1979 that Sandhu would not be his friend if Stephens' salary was not raised. Despite the termination of his contract, Jiricko continued to serve as head of the hospital's anesthesiology department until January 1, 1984.

Jiricko claims that in December 1982, the executive committee of the hospital's medical staff determined, erroneously, that the staff's bylaws prohibited a nurse anesthetist from administering anesthesia without the supervision of an anesthesiologist. In December 1983, an ad hoc committee established by the medical staff purportedly concluded that Jiricko had violated hospital bylaws and recommended that Jiricko be reprimanded. Jiricko claims the ad hoc

committee admitted, however, that the by-laws were unclear and in need of clarification. Jiricko claims that on December 17, 1983, without notice to him or a hearing of any type, the executive committee of the medical staff adopted the ad hoc committee's recommendations and placed a letter of reprimand in Jiricko's file. Jiricko claims that during this December 17, 1983, meeting, Sandhu stated Jiricko needed a psychiatric exam. Jiricko claims that 10 days earlier Sandhu had stated Jiricko had violated federal law and would be subject to a federal court action.

Jiricko further claims that other defendants also warned other physicians not to refer cases to Jiricko or MCAA, or risk losing referral patients themselves.

Jiricko claims he attempted on numerous occasions to correct the ad hoc committee's findings, but he was never permitted an opportunity to respond or correct such findings. As such, Jiricko and MCAA filed this lawsuit in October 1984.

This being a motion to dismiss, plaintiffs Jiricko and MCAA are entitled to the benefit of any factual doubts. *Ammon v. Kaplow,* 468 F.Supp. 1304, 1309 (D.Kan.1979). Moreover, the allegations in plaintiffs' complaint must be taken as true to the extent they are not contradicted by affidavits. *Wyatt v. Kaplan,* 686 F.2d 276, 282 n. 13 (5th Cir.1982) (citing *Black v. Acme Markets, Inc.,* 564 F.2d 681, 683 n. 3 (5th Cir. 1977)).

Of the many grounds asserted by the various defendants for dismissal, only a few warrant discussion at this stage in the proceeding.

Defendants steadfastly maintain the portion of plaintiffs' complaint which sounds in breach of contract involves a state law claim. Thus, defendants claim inclusion of MCAA as a party plaintiff destroys complete diversity and leaves the Court without subject matter jurisdiction. Defendants also claim it is Jiricko who has contract rights to be a member of the staff and not MCAA.

■ Because at this stage in the proceeding the Court cannot determine whether plaintiffs' federal or state claims predominate, it is within this Court's discretion to exercise pendent jurisdiction over the state claims even though complete diversity may not exist. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Moreover, as stated by the Supreme Court in *Gibbs:*

The question of power will ordinarily be resolved on the pleadings. But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been anticipated at the pleading stage.... [R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. *Once it appears that a state claim constitutes the real body of a case,* to which the federal claim is only an appendage, the state claim may fairly be dismissed.

383 U.S. at 727, 86 S.Ct. at 1139 (emphasis added).

Defendants maintain Jiricko cannot have contractual relationships with patients because he is only an employee of MCAA. Therefore, MCAA being a Kansas professional association, defendants claim diversity is lacking and no subject matter jurisdiction exists. However, because of the reasons stated in *Gibbs, supra,* defendants' assertion that plaintiffs' tortious interference claim should be dismissed cannot be entertained at this stage in the proceeding.

■ Defendants also assert the slander claim made against Dr. Sandhu must be dismissed because any remarks of Dr. Sandhu were made at a meeting of the executive committee, and anything said during those meetings is privileged. While at first glance there may be some merit to this claim, at this stage of the proceeding, with-

out the aid of discovery, the Court cannot determine whether any remarks made at the executive committee meeting were directed to people outside of that meeting. Plaintiffs assert the remarks made at the executive committee meeting were directed to people outside of that meeting. Plaintiffs further assert there was a conspiracy and effort to drive them out of business, and all of this stemmed from that executive committee meeting. These assertions at this stage of the proceedings are sufficient to avoid dismissal.

Finally, the last claim warranting discussion is the hospital board of trustees' claim of immunity under the Parker doctrine (state action exception to potential antitrust liability). Defendant board of trustees claims that because it is a board of trustees of a hospital owned by the City of Coffeyville, any action it takes is state action. Defendants cite for support the cases of *Pueblo Aircraft Service, Inc. v. City of Pueblo, Colorado,* 679 F.2d 805 (10th Cir. 1982), *cert. denied* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983); and *Marrese v. Interqual, Inc.,* 748 F.2d 373 (7th Cir.1984).

In *Pueblo,* the Tenth Circuit held the City of Pueblo was immune from antitrust action in a suit brought by fixed base operators at the city's airport, who operated under a lease from the city. The issue raised in *Pueblo* was whether the State of Colorado, by affirmative legislation, granted the City of Pueblo an exemption from operation of federal antitrust laws by virtue of statutory language. The Tenth Circuit held it did.

The Tenth Circuit in *Pueblo* stated:

In its "governmental capacity" a municipality acts as an arm of the state for the public good on behalf of the state rather than itself. *See: Schwalb v. Connely,* 116 Colo. 195, 179 P.2d 667 (1947) (recognizing immunity of city from liability in operation of general hospital it owned and operated by virtue of power delegated to it by state for welfare and protection of inhabitants); *Kirksey v. City of Fort Smith,* 227 Ark. 630, 300 S.W.2d 257 (1957) (airport operation and

maintenance under state statute declaring such operation to be a governmental function).

Those courts which have held the ownership, maintenance and operation of a municipal airport to be a "proprietary function" instead of a "governmental function" have generally done so in the absence of a statute such as C.R.S.1973, § 41–4–101, *supra,* and have found that the municipality acts mainly for its own ends, purposes and benefits, separable from and in addition to any burdens and benefits imposed or conferred by the state government. In the absence of an express statutory direction, such as that contained in C.R.S.1973, § 41–4–101, *supra,* the operation of a municipal airport is generally regarded as a proprietary function rather than a governmental function. *See* 56 Am.Jur.2d, §§ 199, *et seq.;* 66 A.L.R.2d 634; 25 A.L.R.2d 1048; 141 A.L.R. 1440.

The primary duty of the courts is to seek out and ascertain the legislative intent. Where the language of the statute is clear, plain and unambiguous, the duty of interpretation does not arise and rules designed to aid doubtful meanings do not come into play. Here, the Colorado legislature, by virtue of C.R.S. 1973, § 41–4–101, *supra, has expressly declared the operation of the airport facilities "... to be public governmental functions, exercised for a public purpose, and matters of public necessity ..."*

679 F.2d at 810–11 (emphasis added).

In the present action, defendants assert K.S.A. 65–442 and K.S.A. 13–14b01 make the operation of hospitals public governmental functions. K.S.A. 65–442 states:

*Limited liability for medical care facilities and certain duly appointed officials thereof; good faith requirement.* (a) There shall be no liability on the part of, and no action for damages shall arise against, any duly appointed member of the governing board or the duly appointed member of a committee of the medical staff of a licensed medical care facility for any act, statement or proceeding un-

dertaken or performed within the scope of the functions and within the course of the performance of the duties of such committee of the medical staff if such member acted in good faith and without malice, and the medical staff operates pursuant to written bylaws that have been approved by the governing board of the medical care facility.

Nowhere in the language of the above statute does the Kansas Legislature *expressly declare* operation of a hospital to be a public governmental function. Moreover, to determine whether the member of a committee of the medical staff acted in good faith requires discovery.

Because of the length of K.S.A. 13–14b01 *et seq.*, these statutes will not be reproduced in this opinion. However, this Court has examined these statutes and finds no language which expressly declares the operation of hospitals "to be public governmental functions, exercised for a public purpose, and matters of public necessity." In addition, if defendants' assertion is taken to its logical conclusion, then all municipal hospitals would be treated different from private hospitals, even though these statutes were designed to apply to all hospitals in Kansas.

In *Marrese*, an orthopedic surgeon in a solely owned corporation brought action under the Sherman Act against a hospital and its board of directors in their individual capacities, and against members of the hospital committee which recommended revocation of his clinical privileges at the hospital. The Seventh Circuit affirmed the district court's dismissal of the action. In deciding the case, the court found that Indiana's statutory adoption of the comprehensive peer review procedure satisfied the first element of the Parker test (clearly articulated and affirmatively expressed policy). The court also considered the issue and held that the second element (active regulation) was satisfied by Indiana statutory provisions. While *Marrese* and the present action appear to be factually similar and similar statutory provisions are present, the cases are different.

 In *Marrese*, plaintiff was given due process because the hospital medical staff executive council followed its own bylaws in granting plaintiff a hearing to rebut the charges made against him. In the present action, Jiricko claims, and defendants do not deny, that Jiricko was never given a hearing; this, in violation of the hospital's own bylaws. As such, this Court does not find *Marrese* to be persuasive.

IT IS THEREFORE ORDERED this 9 day of October, 1985, that all of defendants' motions to dismiss be denied. Both sides shall proceed with discovery. After completion of discovery, this Court may be better able to sift through the various claims of plaintiffs and would welcome defendants' summary judgment motions. The matter is suspended to February 3, 1986, at 11:00 A.M., for a status conference.